## ALFRED WHITE v. THE STATE.

*No. 3146. Decided February 17.*

1. **Practice—Juror—Peremptory Challenges when not Exhausted.**—Driving or forcing a defendant to a peremptory challenge of an incompetent juror is not cause for reversal when defendant has not exhausted his peremptory challenges in the completion of the jury.

2. **Dying Declarations Elicited in Answer to Questions.**—Where in a very few minutes after deceased was shot the witness reached him and asked him, "Who shot you?" *held*, that the question was not one "calculated to lead deceased to make any particular statement." The mere fact that certain of the dying declarations were made in response to questions asked deceased does not take from them their voluntary and spontaneous character.

3. **Same—Dying Declarations Inconsistent.**—The fact that dying declarations are inconsistent or untrue in part, in that they include parties to the shooting who are positively shown not to have been present, would not render the declarations incompetent and inadmissible, but would go rather to their credibility.

4. **Declarations which are Considered both as Dying Declarations and Res Gestæ.**—Where the statements and declarations were made only a few minutes at the furthest after the deceased was shot, *held*, that such declarations were admissible both as dying declarations and *res gestæ*.

5. **Impeachment of Defendant who is a Witness in His Own Behalf.**—Where on cross-examination of a defendant who had testified in his own behalf he was asked, if while confined in jail for this murder he had not sent a letter out to his son sewed up in his (defendant's) drawers, and defendant's counsel objected to the question on the ground that it was not proper to examine defendant (witness) as to any matter about which he had not testified in his examination in chief, *held*, that the objection was properly overruled. When a defendant in a criminal case takes the stand to testify in his own behalf he assumes the character of a witness, and is entitled to the same privileges and subject to the same treatment, and to be contradicted, discredited, or impeached, in the same manner as any other witness.

6. **Charge of Court—Murder in Second Degree.**—Where on a trial for murder the evidence showed that it was committed at night and by assassination by lying in wait, *held*, that such murder would be murder in the first degree, and that the court did not err in refusing to charge on murder in the second degree.

7. **Evidence of Previous Difficulties and Threats.**—As tending to throw light upon the animus of the parties, it was competent for the prosecution to show an altercation between them had on the afternoon before the homicide, and at which time deceased made threats against defendant.

8. **Charge of Court as to Accomplice Witness.** — Where it was objected to the charge of the court that it failed to instruct the jury in so many words that a particular witness was an accomplice, but submitted the question as to whether he was an accomplice or not to the jury, *held*, that the action was not erroneous.

APPEAL from the District Court of Walker. Tried below before Hon. N. G. Kittrell.

Appellant was indicted for the murder of one Rufus Bashful, and at his trial was found guilty of murder in the first degree, his punishment being assessed at death.

It appears that on the evening of the 15th of December, 1890, about 9 o'clock, Rufus Bashful, who lived in the little village of Waverly, in Walker County, hearing a noise out about his front yard, went out on his gallery to see about it, when he was immediately shot down by some one ensconsed somewhere in the yard close by. He received seven buckshot in his left side and two in his left arm. When parties hearing the shots and cries of murder from his house repaired to the scene, and had reached him, he told them that he thought there were three parties engaged in the shooting or present when it was done, and named Alfred White and Bob Cottrell as two of the parties. He died the next morning, between 9 and 10 o'clock, from these wounds.

It appears that there had been a difficulty between this appellant, deceased, and others at a school house, in which deceased had used a knife upon one of the parties. That a prosecution had grown out of that difficulty, and was still pending at the time of this killing; and serious threats had been made by the parties against each other. About sundown on the evening of the killing deceased and defendant had met and a wordy altercation had ensued, in which deceased had indulged in serious threats against defendant. On the morning after the shooting one or more "00" buckshot were found at the house of deceased, which were evidently a part of the load fired out of the gun at the time of the shooting. Tracks had been found of one or more parties who had been standing in and about the yard of deceased, and at one of these places where the tracks were was found a piece of jute bagging.

Charley Powell, a witness who testified in behalf of the State, stated, that he was present with the defendant at the time of the fatal shooting, and that defendant was the party who shot and killed Rufus Bashful. In corroboration of his testimony the State proved that defendant a few days before the killing had purchased some "00" buckshot from a merchant in the town of Waverly, they being of the size and character of those found at the scene of the homicide. The morning after the killing defendant's shotgun was found at his house, and in the opinion of the

witnesses who examined it, the right hand barrel had been but recently discharged but had been reloaded, and in unloading this gun the parties found the wadding used to load the gun with was jute bagging similar to that picked up at the place of the homicide. There were other inculpatory facts proved, but it is unnecessary that we should go into any other or further statement of the evidence.

*McKinney & Hill*, for appellant, filed an able and elaborate brief.

No brief on file for the State.

WHITE, PRESIDING JUDGE.—Appellant was convicted of murder in the first degree for the killing of Rufus Bashful, the penalty being assessed at death.

Defendant's first bill of exceptions complains of the ruling of the court in compelling him to exercise a peremptory challenge on the juror J. H. Young. The judge's explanation of said bill shows, that when the impanelling of the jury was complete the defendant had not exhausted his peremptory challenges. This being the case, appellant has not been injured, and has no cause of complaint. Willson's Crim. Stats., sec. 2293.

Defendant's second bill of exceptions was reserved to the action of the court in admitting the witnesses Strange and McKiblin to testify to the dying declarations of the deceased. This second witness testified, that as soon as the gun fired he ran immediately to the place, and found the deceased suffering great pain and agony. McKiblin was a deputy sheriff. He said he was in a saloon. When he heard the gun fired, he stepped to the door and located the sound down at the house that Rufus Bashful had moved into that day. Dr. Watson was with him, and he asked the doctor to go with him; that some one was hurt down there. They both ran down to the house and found deceased in a chair, and they put him upon the bed and examined his wounds, finding eleven bullet holes in his left side and arm. The doctor told him that he was bound to die, to which deceased replied, "Oh, yes, doctor, they have killed me." Just then the deceased asked McKiblin to turn him over and do something to ease him. As the witness turned him over, deceased said, "They have killed me; catch 'em." "I asked, 'Catch who? Who shot you, Rufe?' He said, 'Mr. Mason;" and he seemed not to finish the sentence, when witness interrupted, and said he was mistaken; that "Mr. Mason was with the doctor and I when the gun fired, and I know he did not do it." He then said there were two or three of them; that it was Alfred White and Bob Cottrell; and Mr. Mason was into it, and knew all about it. "I asked Rufe, 'Did you see them?' He said he did, and thought they were standing on

the inside of the fence. He said he stepped or fell back into the house as soon as they shot." This witness was at the house off and on until 2 o'clock that night, and he had two or three conversations with the deceased. He says: "Every time I talked to him he contended it was the parties named—Alfred White and Bob Cottrell—who shot him, and that Mason knew all about it. * * * It was in response to the question asked him, 'Who shot you?' that Rufe said who the parties were who shot him."

Defendant objected and excepted to this evidence as dying declarations, because it appeared that the declarations were not voluntarily made; that they were made through the persuasion of other persons, and were made in answer to interrogatories calculated to cause the deceased to make such statements; and because said declarations were inconsistent and untrue. We are of opinion that the objections are not well taken. We think the predicate was sufficiently laid under the statute to admit the dying declarations. Code Crim. Proc., art. 748; Willson's Crim. Stats., sec. 1045. The question, "Who shot you?" was certainly not a question that was calculated to draw his attention to any particular party, and this seems to be the only interrogatory that was propounded to the deceased. The mere fact that certain of the dying declarations were made in response to questions asked deceased does not take from them their voluntary and spontaneous character. Pierson v. The State, 18 Texas Ct. App., 524.

As to the objection that the declarations were inconsistent and untrue in so far as they embraced Mr. Mason as one of the parties who killed him, this fact would not of itself render the declarations incompetent and inadmissible, but would go rather to the credibility of the statement or declarations. The learned trial judge in his explanation of this bill of exceptions states, that the construction that Bashful said Mason shot him is not a proper construction to be placed upon the language used by the deceased, because when he repeated his declarations afterward on one or more occasions he did not state that Mason had shot him, but that Alf White and Bob Cottrell shot him, and Mason was into it and knew all about it. This statement was repeated several times.

We are of opinion that the objection to the evidence as dying declarations is not maintainable, and we are further of opinion that the first statement made by the deceased after the party reached him was admissible as *res gestœ*, as well as dying declarations. This was made in a few minutes, at the furthest, after the deceased was shot. See McInturf v. The State, 20 Texas Ct. App., 335, and authorities there cited; Willson's Crim. Stats., sec. 1046; Testard v. The State, 26 Texas Ct. App., 260; Ex Parte Albitz, 29 Texas Ct. App., 128; Lewis v. The State, 28 Texas Ct. App., 140; Drake v. The State, 29 Texas Ct. App., 265.

Defendant's third bill of exceptions shows, that after the defendant had testified as a witness in his own behalf on the examination in chief, counsel for the State asked said witness, the defendant, on cross-examination, if he had not sent a letter out to his son sewed up in his (witness') drawers while he was confined in jail for this murder. Defendant's counsel objected to the above question, on the ground that it was not proper to examine the witness, who was the defendant, in regard to any matter about which he had not testified on his examination in chief. This objection was overruled by the court. In the case of McFadden, 28 Texas Court of Appeals, 241, it was held, quoting from The State v. Pfefferle: "Where a defendant in a criminal case takes the stand to testify in his own behalf he assumes the character of a witness, and is entitled to the same privileges, and is subject to the same treatment, and to be contradicted, discredited, or impeached in the same manner as any other witness." The State v. Pfefferle (Kans.), 12 Pac. Rep., 406; 9 Crim. Law Mag., 222; 4 Crim. Law Mag., 353; Clarke v. The State, 8 Crim. Law Mag., 19, 519; The State v. Anderson (Mo.), 1 S. W. Rep., 135; Quintana v. The State, 29 Texas Ct. App., 401. The objection to this question was not well taken. The learned trial judge, in his explanation of this bill, says, that "the question was admitted for the sole purpose, as was distinctly stated to the jury, of being considered by them in passing upon the credibility of the defendant White. The letter and its contents were carefully excluded from the jury, because written in jail."

Defendant's fourth bill of exceptions complains of the charge of the court, in that it did not submit the law of murder in the second degree as an issue to be passed upon by the jury. The court did not err in declining or refusing to submit the law of murder in the second degree. There was no second degree in the murder perpetrated, as shown by the testimony in the case. It was an assassination, committed by the perpetrator, who was lying in wait, and who under the cover of the darkness of night shot down his unsuspecting victim upon his own threshold, after having purposely made a noise on his premises, which caused him to come out upon his gallery. Caldwell v. The State, 28 Texas Ct. App., 566, and authorities cited.

Defendant's fifth bill of exceptions was reserved to the admission by the court of the testimony of one Fisher, a witness for the State, concerning a meeting and altercation between the deceased and the defendant about sundown on the evening of the killing, in which the deceased made threats against the defendant. This evidence was properly admitted, and tended to throw light upon the state, condition, and feeling existing between the parties.

We have discussed all the exceptions reserved by the defendant to the rulings of the court during the progress of the trial, and have found in none of them any matter which constitutes reversible error. No ex-

ception was taken to the charge of the court, nor was any additional instruction asked.

The charge is objected to because it did not instruct the jury in so many words that the witness Powell was an accomplice. The charge submitted this question to the jury. In support of his proposition defendant cites Barrara v. The State, 42 Texas, 260, and Williams v. The State, Id., 392. We have carefully examined these cases, and they fail to support the proposition contended for. The court did not err in submitting this question to the jury for their determination. The charge was a full and fair presentation of the law applicable to the facts in the case.

We are of opinion that the verdict and judgment are warranted by the evidence adduced on the trial; and having found no reversible error, the judgment is in all things affirmed.

*Affirmed.*

Judges all present and concurring.