342 S.E.2d 127

**STATE of West Virginia ex rel. Lance LEVITT**

v.

**Donald BORDENKIRCHER, Warden, West Virginia Penitentiary.**

No. 16756.

Supreme Court of Appeals of West Virginia.

March 12, 1986.

Fitzsimmons & Parsons, William E. Parsons, II, Robert P. Fitzsimmons, Jacob M. Robinson, Robinson & Dickinson, Wheeling, for appellant.

Mary Beth Kershner, Asst. Atty. Gen., Charleston, for appellee.

McHUGH, Justice:

This action is before this Court upon the appeal of Lance Levitt from the final order of the Circuit Court of Marshall County, West Virginia. Pursuant to that order, entered in February, 1985, the circuit court denied the appellant relief in habeas corpus with regard to his conviction of murder of the first degree. *W.Va.Code*, 61-2-1 [1931]. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

## I

### *Facts*

On the night of May 17, 1971, Pamela W., age twelve, and her older sister, Louise, were walking in the Elm Grove area of Wheeling, Ohio County, West Virginia. A man carrying a revolver approached the two girls and told Louise to lie down in some nearby bushes or he would shoot "her friend." Louise hesitated, and in the intervening moments, the revolver fired and the man fled the scene. Pamela W., struck by the bullet, died a few days later.[1]

In August, 1972, while incarcerated in the State of Ohio upon an unrelated offense, the appellant sent letters to the Wheeling Police Department indicating that he wanted to discuss the shooting of Pamela W. Later that month, in the presence of Ohio County, West Virginia, authorities, the appellant gave a tape recorded confession.[2] In addition, the appellant assisted the authorities in locating the revolver.[3]

In September, 1972, the appellant was indicted in Ohio County for murder of the first degree. *W.Va.Code*, 61-2-1 [1931]. Counsel was appointed to represent him. The appellant's counsel moved to enter a plea of guilty to murder of the second degree. That motion, however, was denied.

Thereafter, the appellant's counsel filed various pretrial motions, including (1) a motion for a bill of particulars, (2) a motion to obtain a list of State witnesses, (3) a motion for the disclosure of exculpatory evidence and (4) certain motions to produce, inspect and copy certain documents, reports, etc. The circuit court required the State to com-

---

1. As discussed, *infra,* the appellant confessed to the shooting of Pamela W. In that confession, the appellant stated:

   I ordered the one to lie down and I was going to frisk her to see if she had any money, purse, wrist watch, what have you, on her. She refused, I grabbed the other girl [Pamela] and said something to the effect ah, lie down or your friends [*sic*] going to get it. Well, I hadn't had any experience with the gun before and when I further threatened her instead of pulling, instead of using the trigger, I held the grip of the gun and pulled back the hammer .... I began to shake and I knew if I would have held the gun here much longer I wouldn't know what was going to happen, so I started taking it away when she [Louise] refused, I was going to stick it in my pocket and run which I later did, but as I took the gun away the hammer slipped out and I had taken a pre-caution earlier of emptying four of the seven chambers, but it was one of these revolvers that slip around, the chamber was loaded and the gun went off. I ran down the street, I didn't look, I didn't see the bullet hit her [Pamela] ....
   ....

   LT. NOLL: What was your purpose in accosting the two girls originally?
   DEFENDANT: I think probably to rob them, take watches, rings, whatever they had.

2. The parties have indicated to this Court that, in addition to the tape recorded confession, the appellant gave a handwritten confession to the Ohio County authorities. Nevertheless, the parties have further indicated that the tape recorded confession and the handwritten confession are essentially identical.

3. It should be noted that, prior to the appellant's confession, the investigation of the death of Pamela W. had reached an impasse. From an array of photographs, Louise W. identified a man other than the appellant as the assailant. That same man was identified by two others as the man who, shortly after the shooting, "got into an automobile" near the scene. Furthermore, at a line-up conducted by the authorities, Louise W. failed to identify the appellant as the assailant. Nevertheless, the record does not indicate that the man identified by Louise W. and others was ever charged with the shooting.

   However, question 19 of the appellant's motion for a bill of particulars stated: "How was the defendant, Lance Levitt, identified as being the alleged killer of Pamela [W.] [?]" The State replied, in writing, as follows: "Louise [W.] by a Photo Line-Up and Lance Levitt by admission and confession."

ply with the informational requests reflected in those motions. The appellant's counsel, however, did not move to suppress the appellant's confession.

In March, 1973, the Circuit Court of Ohio County accepted the appellant's plea of guilty to murder of the first degree. The appellant entered that plea upon the recommendation of his counsel. Although there was no "plea bargain" between appellant's counsel and the State with respect to the plea, the appellant's counsel believed that, in view of the confession, a jury trial would be a "futile effort."

The circuit court subsequently conducted an evidentiary hearing concerning the imposition of sentence. The appellant called two witnesses at that hearing: Joseph Noll, a Wheeling police lieutenant, and Dr. Herbert Thomas, a psychiatrist. Noll testified that the appellant confessed to the shooting and aided the authorities in locating the revolver. Dr. Thomas testified that he examined the appellant and concluded that the appellant suffered from a "passive aggressive personality." Dr. Thomas further testified that the appellant would benefit from incarceration and would, after a few years, be a good candidate for parole. The State called no witnesses at the hearing.

At the conclusion of the hearing, the circuit court sentenced the appellant to a term of life imprisonment, without a recommendation of mercy. *W. Va. Code*, 62–3–15 [1965].

## II

### The Habeas Corpus Hearing

In 1982, the appellant filed an amended habeas corpus petition in the Circuit Court of Ohio County. The appellant contended, *inter alia*, that his conviction of murder of the first degree, and sentence, resulted from ineffective assistance of counsel. The action was transferred to the Circuit Court of Marshall County, West Virginia.

An evidentiary hearing was conducted in the Circuit Court of Marshall County in November, 1983. During that hearing, the appellant testified that, prior to his plea of guilty to murder of the first degree, his counsel did not disclose or discuss with him (1) the State's ballistics report concerning the revolver,[4] (2) the State's report concerning the autopsy of Pamela W.,[5] (3) the State's list of witnesses to be called at trial[6] and (4) the possibility of asserting lack of intent as a defense to "premeditated" murder. Moreover, the appellant testified that, prior to his plea of guilty, his counsel did not disclose or discuss with him (1) the fact that Louise W. identified, from an array of photographs, a man other than the appellant as the assailant[7] or (2) the fact that that same man was identified by two others as the man who, shortly after

---

**4.** The State's ballistics report contained the following conclusion:

> The K2 revolver [of the appellant] was test fired in the Laboratory and the bullets obtained were microscopically compared with the resubmitted Q1 bullet [taken from Pamela W.]. As a result of these comparisons it was determined that although the rifling impressions in the test bullets from K2 are like those in the Q1 bullet there are not sufficient matching microscopic marks between these specimens to effect an identification. Therefore, it was not possible to determine if Q1 had been fired from the K2 revolver.

Contrary to the appellant's testimony, the appellant's counsel testified that he believes he did, in fact, discuss the State's ballistics report with the appellant.

**5.** The appellant contends that the autopsy report, which described the path of the bullet which killed Pamela W., is consistent with the appellant's assertion that he was "withdrawing" the revolver from Pamela W. at the time the

revolver fired "by accident." The record does not demonstrate that the appellant's counsel disclosed or discussed the autopsy report with the appellant prior to the entry of the appellant's plea to murder of the first degree.

**6.** The State's list of witnesses to be called at trial consisted of 30 names, approximately half of which were police officers. Although the appellant's counsel obtained that list by motion, the appellant's counsel did not disclose or discuss the list with the appellant prior to the entry of the plea. The appellant indicated, however, that, prior to the entry of the plea, he and his counsel discussed a few people who were potential State witnesses.

**7.** The appellant indicated, however, that, prior to his plea of guilty, he knew that at a line-up conducted by the authorities Louise W. failed to identify the appellant as the assailant.

the shooting, "got into an automobile" near the scene.

Furthermore, the appellant testified that although his August, 1972, confession was not based upon threats or a failure by the authorities to advise him of his constitutional rights, the confession incorrectly expressed robbery as the motive for confronting Pamela and Louise W. The appellant testified that "sexual molestation" was his motive upon the night in question.[8] The appellant stated that he informed his counsel of that inaccuracy in the confession. Nevertheless, a motion to suppress the confession was never filed.

Testifying upon behalf of the appellant at the Marshall County hearing was David J. Joel, who had been the prosecutor upon the appellant's murder charge. Joel testified that the evidence upon the charge, i.e., the purported accidental firing of the revolver, failed to demonstrate a premeditated killing by the appellant. Joel further testified, however, that in pursuing a first degree murder conviction, the State would probably have proceeded under the West Virginia "felony-murder rule." W. Va. Code, 61–2–1 [1931]. Nevertheless, inasmuch as Joel was of the opinion that the State would have had difficulty establishing that the appellant intended to commit either robbery or rape (in association with the death of Pamela W.), convicting the appellant of murder of the first degree, under the "felony-murder rule," would have been doubtful. Finally, Joel testified that, as a defense lawyer, he would have moved to suppress the appellant's confession. However, Joel further testified that

"I had confidence as a prosecutor that it wouldn't have been suppressed."

Also testifying upon behalf of the appellant were attorneys G. Charles Hughes and Jolyon W. McCamic. Those witnesses, qualified as experts in the practice of criminal law, indicated that the appellant's conviction resulted from ineffective assistance of counsel. They testified that the appellant's counsel should have (1) sought more actively to determine whether the State intended to proceed under the "felony-murder rule," rather than upon a theory of premeditation, in pursuing a first degree murder conviction, (2) discussed more fully with the appellant the evidence for and against the appellant and (3) moved to suppress the confession.

The only witness called by the State during the Marshall County hearing was Arch W. Riley, the appellant's counsel upon the murder charge. Riley testified that he had represented defendants charged with crime prior to his representation of the appellant. He stated that he met with the appellant eight to ten times during the period in question and filed several motions upon the appellant's behalf.

Riley indicated that his representation of the appellant centered around the appellant's August, 1972 confession. He discussed the confession with the appellant and stated that, in his opinion, no grounds existed for the confession's suppression. Riley testified:

Q. Let's talk about the confession then. Did you move to suppress the confession?

---

8. The record contains the written report of Dr. Herbert Thomas, a psychiatrist, who examined the appellant prior to the appellant's sentencing by the Circuit Court of Ohio County. That report sets forth certain instances of the appellant's behavior prior to the shooting of Pamela W. on May 17, 1971. Specifically, four instances are described where the appellant assaulted women but fled in the face of their protests or resistance.

The report further states that, subsequent to the incident involving Pamela and Louise W., the appellant engaged in other assault incidences which appear, to this Court, to be somewhat more serious than the assaults which occurred before May 17, 1971.

Dr. Thomas concluded his report by stating that, in his opinion, the appellant had no intention of robbing either Pamela or Louise W. upon the night in question. Rather, Dr. Thomas concluded that the appellant's motive was to "approach them for the same kind of aggressive sexual gratification that he had obtained in other similar situations." Dr. Thomas did not believe that the appellant intended to rape either Pamela or Louise W.

However, the State in its brief before this Court indicates that either attempted robbery or attempted rape, connected with the shooting of Pamela W., would support the appellant's conviction of murder of the first degree, under the "felony-murder rule." W. Va. Code, 61–2–1 [1931].

A. No.

Q. Why not?

A. I didn't have grounds.

Q. Did Mr. Levitt ever say that he was coerced in any manner in giving his confession?

A. No.

Q. Threatened in any manner?

A. No.

Q. Promised any leniency?

A. No.

Q. Did he ever claim that he was not Mirandized?

A. No.

Q. Did you explore these things with the client?

A. Yes.

Q. Did you explore them with any other persons?

A. I interrogated Detective Noll [who was present when the appellant gave the confession].

Q. So it's your opinion that you had no grounds to move to suppress?

A. That was my opinion, yes.

When questioned about whether he attempted to determine whether the State intended to proceed under the "felony-murder rule," rather than upon a theory of premeditation, Riley stated: "In my Bill of Particulars I asked how they intended to prove intent but at that time we were faced with a confession of guilt and as to how exactly they were going to proceed did not concern me in that time frame...."

Moreover, Riley indicated that Louise W.'s account of the incident, i.e., that the assailant "grabbed my sister, pointed the gun to her head and told me to lie down or he would shoot my sister. * * * [and then] shot my sister ...," would have been damaging to the appellant at trial.[9]

Riley testified that he believed the best defense for the appellant was to enter the guilty plea to murder of the first degree and concentrate upon mitigating the appellant's sentence. Riley indicated that he, thus, elicited before the Circuit Court of

Ohio County the testimony of Lt. Noll, who stated that the appellant confessed to the shooting and aided the authorities in locating the revolver, and Dr. Thomas, who stated that the appellant would benefit from incarceration and would, after a few years, be a good candidate for parole.

Finally, Riley testified that he told the appellant that if the appellant entered a plea of guilty to murder of the first degree, the trial judge could sentence the appellant to life imprisonment, with or without mercy.

At the conclusion of the hearing, the Circuit Court of Marshall County denied relief to the appellant.

## III

### Standards—Ineffective Assistance of Counsel

The right of an accused in a criminal case to be represented by counsel is constitutional in nature. *U.S. Const.* amend. VI; *W.Va. Const.* art. III, § 14. Moreover, the right of the accused to be represented by counsel includes the right to "effective assistance" of counsel. *State ex rel. Favors v. Tucker,* 143 W.Va. 130, 140, 100 S.E.2d 411, 416 (1957), *cert. denied,* 357 U.S. 908, 78 S.Ct. 1153, 2 L.Ed.2d 1158 (1958); *State ex rel. West Virginia-Pittsburgh Coal Co. v. Eno,* 135 W.Va. 473, 482, 63 S.E.2d 845, 850 (1951).

In *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974), this Court set forth standards for determining the validity of claims of ineffective assistance of counsel. Syllabus points 19 and 21 of *Thomas* state:

In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he ex-

9. We note, of course, that, inasmuch as Louise W.'s identification of the appellant as the assailant was quite contradictory, the credibility of her anticipated testimony against the appellant was doubtful.

hibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interest, unless no reasonably qualified defense attorney would have so acted in the defense of an accused.

It should be noted, however, that this Court, in *Thomas*, indicated that the above standards were to be "prospectively" applied. 157 W.Va. at 665, 666, 203 S.E.2d at 460–61. The appellant in this action was convicted in 1973, prior to the *Thomas* decision.

The pre-*Thomas* test concerning ineffective assistance of counsel, applied in various federal courts, was described in the *Thomas* opinion: "counsel's efforts must have been so inadequate as to render the trial a farce and a mockery of justice." 157 W.Va. at 662, 203 S.E.2d at 459. For example, in *Gibson v. Boles*, 288 F.Supp. 472 (N.D.W.Va.1968), the district court, in rejecting a claim of ineffective assistance of counsel, stated: "The effectiveness of counsel is not determined by whether counsel obtained the 'best deal' for his client but whether he has performed his duties to represent his client in a way that does not shock the conscience of the court or produce a mockery of justice." 288 F.Supp. at 476. The accused, in *Gibson*, entered a plea of guilty in State court to forgery and received a penitentiary sentence of one to ten years. The *Gibson* opinion states: "A petitioner's disappointment in receiving a more severe sentence than he hoped would be imposed is not a basis for finding ineffective assistance of counsel." 288 F.Supp. at 477.

Prior to *Thomas*, however, West Virginia did not simply follow a standard based upon "farce and mockery" in determining ineffective assistance of counsel. Reject-

ing a claim of ineffective assistance of counsel in a case where the accused entered a plea to murder of the first degree, this Court in *State ex rel. Burkhamer v. Adams*, 143 W.Va. 557, 573, 103 S.E.2d 777, 787, *cert. denied*, 358 U.S. 869, 79 S.Ct. 102, 3 L.Ed.2d 101 (1958), stated that counsel "must diligently attempt to see that no constitutional or substantial right is denied such a defendant and that he is afforded a fair and impartial trial. It is just as clear, however, that counsel should be fair and honorable in their actions and in their representations to the court." *See also State ex rel. Owens v. King*, 149 W.Va. 637, 640, 142 S.E.2d 880, 882 (1965); *State ex rel. Robison v. Boles*, 149 W.Va. 516, 520–21, 142 S.E.2d 55, 58 (1965); *State ex rel. Clark v. Adams*, 144 W.Va. 771, 777, 111 S.E.2d 336, 340 (1959), *cert. denied*, 363 U.S. 807, 80 S.Ct. 1242, 4 L.Ed.2d 1149 (1960).

A recent, important case concerning standards for determining the validity of claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). The Supreme Court of the United States in *Strickland* stated:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.[10]

As indicated in 1 F. Cleckley, *Handbook on West Virginia Criminal Procedure* ch. 1, § E (Michie Co.1985), the "farce and mockery" test has been criticized as not helpful in resolving the constitutional issues regarding ineffective assistance of counsel in criminal cases. Thus, the more sophisticated standards of *Thomas* were adopted by this Court in 1974. Nevertheless, although *Thomas* is to be applied "prospectively," this State's departure from the "farce and mockery" test was somewhat foreshadowed by the pre-*Thomas* cases cited above.

In any event, for the reasons stated below, we hold that the appellant is entitled to no relief upon the issue of alleged ineffective assistance of counsel, even upon the standards articulated in *Thomas* and *Strickland.*

## IV

### *Discussion*

The "felony-murder rule" in West Virginia is reflected in the language of *W. Va. Code,* 61–2–1 [1931], which states that a "[m]urder [homicide] . . . in the commission of, or attempt to commit, arson, rape, robbery or burglary, is murder of the first degree." *See State v. Sims,* 162 W.Va. 212, 248 S.E.2d 834 (1978). As we explained in *State v. Williams,* 172 W.Va. 295, 305 S.E.2d 251 (1983):

> To sustain a conviction of felony-murder, proof of the elements of malice, premeditation or specific intent to kill is not required. . . . Rather, the elements which the State is required to prove to obtain a conviction of felony murder are: (1) the commission of, or attempt to commit, one or more of the enumerated felonies; (2) the defendant's participation in such commission or attempt; and (3) the death of the victim as a result of injuries re-

ceived during the course of such commission or attempt.

172 W.Va. at 311, 305 S.E.2d at 267.

■ In *State v. Sims, supra,* the defendant entered a plea of guilty to murder of the first degree, where the State had proceeded upon a felony-murder theory. Challenging his conviction, the defendant asserted that the alleged "accidental discharge of his shotgun during the commission of a burglary" would, if proven, reduce the crime below murder of the first degree. Rejecting that argument, this Court, in *Sims,* held in syllabus point 7: "The crime of felony-murder in this State does not require proof of the elements of malice, premeditation or specific intent to kill. It is deemed sufficient if the homicide occurs accidentally during the commission of, or the attempt to commit, one of the enumerated felonies." Specifically, this Court stated in *Sims*:

> The defendant's trial counsel competently advised him as to the guilty plea, as there could be no reasonable expectation under the settled principles of our law that an unintended homicide committed in the course of an attempted burglary would constitute a defense to first degree murder arising out of the felony-murder rule.

162 W.Va. at 229, 248 S.E.2d at 844.

■ In the action before this Court, the principal evidence of the State consisted of the appellant's August, 1972 confession. That confession, suggesting an accidental firing of the revolver, is weak in terms of a theory that Pamela W.'s death was brought about by deliberation and premeditation. However, the confession clearly establishes murder of the first degree, under the West Virginia felony-murder rule.

The confession expressly demonstrates that the death of Pamela W. resulted from an injury she received during the course of an attempted robbery perpetrated by the appellant. *State v. Williams, supra.* The appellant's subsequent denials to the contrary, he twice stated in the confession that

---

**10.** We recently cited *Strickland* in *State v. Swiger,* 175 W.Va. 578, 336 S.E.2d 541, 546, n. 4 (1985). *See also* 1 F. Cleckley, *Handbook on*

*West Virginia Criminal Procedure* ch. 1, § E (Michie Co. 1985).

his purpose in confronting Pamela and Louise W. was to take money, rings, watches, etc. *See* n. 1 and n. 8, *supra; W.Va.Code,* 61–2–12 [1961]. As stated in 9B M.J. *Homicide* § 20 (1984): "[O]ne who kills another in the attempt to commit, or in the commission of, robbery is guilty of murder in the first degree."

Moreover, the record before us discloses no grounds upon which the appellant's confession could have been suppressed. The appellant testified at the Marshall County hearing that the confession was not based upon threats or a failure by the authorities to advise him of his constitutional rights. The appellant's counsel explored the question of threats, etc., with the appellant, and the prosecutor involved in the case testified, at the Marshall County hearing, that "I had confidence as a prosecutor that [the confession] wouldn't have been suppressed."

Accordingly, we note that, in view of the confession's clear admissibility, the absence of a motion to suppress the appellant's confession did not constitute ineffective assistance of counsel. *State v. Cecil,* 173 W.Va. 27, 311 S.E.2d 144 (1983); *State v. Baker,* 169 W.Va. 357, 287 S.E.2d 497 (1982). *Cf., People v. Coffman,* 2 Cal. App.3d 681, 82 Cal.Rptr. 782 (1969).

■ Nor do we find ineffective assistance of counsel upon the assertion that appellant's counsel should have sought more actively to determine whether the State intended to proceed under the felony-murder rule, rather than upon a theory of premeditation, in pursuing a first degree murder conviction.

In *State v. Young,* 173 W.Va. 1, 311 S.E.2d 118 (1983), the defendant contended that his murder indictment failed to inform him of the State's intention to proceed under a felony-murder theory, and, thus, the State's presentation of evidence relating to robbery unfairly placed the defendant at a disadvantage at trial. In particular, the defendant asserted that "[b]ecause he had no notice of the State's intention to present evidence of robbery, ... the trial court should have refused the State's instructions outlining the elements of the offense

of robbery and the felony murder rule." 173 W.Va. at 17, 311 S.E.2d at 134–35. Rejecting the defendant's contention, we recognized, in *Young,* that an indictment which charges that the defendant "feloniously, wilfully, maliciously, deliberately, premeditatedly and unlawfully did slay, kill and murder ..." is sufficient to support a conviction under the West Virginia felony-murder rule, "it not being necessary, under *W.Va.Code,* 61–2–1, to set forth the manner or means by which the death of the deceased was caused." 173 W.Va. at 18, 311 S.E.2d at 135. Furthermore, the *Young* opinion states:

> [I]t cannot be seriously contended that the appellant had no notice of the State's intention to present evidence of robbery at trial. Indeed, it appears from the record that the first mention of the offense of robbery and of the State's felony murder theory came from the mouth of defense counsel during his opening remarks to the jury. Moreover, information divulged by the State during pretrial discovery conveyed to defense counsel its intention to present evidence of robbery at trial. Accordingly, we find that the appellant's claim of unfair surprise is without merit.

173 W.Va. at 18, 311 S.E.2d at 135. *See also State v. Bragg,* 160 W.Va. 455, 463–65, 235 S.E.2d 466, 471–72 (1977).

The appellant's indictment in the action before this Court is similar to the indictment involved in *Young.* Although the appellant's counsel should have been more aggressive in seeking to determine whether the State intended to proceed under the felony-murder rule, rather than upon a theory of premeditation, both theories, particularly felony-murder, were discernible from the appellant's confession. The appellant discussed the confession with his counsel prior to the entry of the guilty plea.

In any event, as indicated above, the appellant's confession strongly suggested felony-murder. The actions of the appellant's counsel in concentrating his efforts upon the appellant's sentencing, we believe, did not rise to the level of ineffective assistance of counsel.

■ In view of the appellant's August, 1972 confession and its doubtless admissibility, the remaining contentions of the appellant concerning his counsel's actions become less compelling.

Contrary to the appellant's testimony at the Marshall County hearing, the appellant's counsel testified at that hearing that he believes he did, in fact, discuss the State's ballistics report with the appellant. That report was undeterminative, rather than exculpatory or inculpatory. *See* n. 4, *supra.*

Admittedly, the appellant's counsel was neglectful in failing to discuss with the appellant, prior to the entry of the guilty plea, the autopsy report, the State's list of witnesses and the pre-trial identification matters. These deficiencies are somewhat mitigated, however, by the fact that, prior to the entry of the plea, the appellant and his counsel discussed a few people who were potential State witnesses, and the appellant knew that Louise W. had failed to identify the appellant at a line-up. *See* n. 6 and n. 7, *supra.*

■ An attorney representing an accused in a criminal case should discuss the defenses to the charge with his client. *In Re Williams*, 1 Cal.3d 168, 81 Cal.Rptr. 784, 460 P.2d 984 (1969). However, defense counsel need not pursue "every possible theory of defense ...." *Spears v. United States*, 250 F.Supp. 698, 706 (S.D.W.Va.1966); *State v. Watson*, 164 W.Va. 642, 650, 264 S.E.2d 628, 633 (1980).

■ In this action, the appellant admitted that, at the time he entered his plea of guilty to murder of the first degree, he knew that the trial judge "had the option to sentence [the appellant] to life without mercy." The absence of a "plea bargain" concerning the entry of a plea in a criminal case does not *per se* constitute grounds for vacating the plea. *See Gibson v. McKenzie*, 163 W.Va. 615, 259 S.E.2d 616 (1979) (no "plea bargain," conviction affirmed upon a plea of *nolo contendere*); *Gibson v. Boles*, *supra* (effectiveness of counsel not determined by whether counsel obtained "best deal" for his client). Rather,

as this Court held in syllabus point 3 of *State v. Sims, supra*:

Before a guilty plea will be set aside based on the fact that the defendant was incompetently advised, it must be shown that (1) counsel did act incompetently; (2) the incompetency must relate to a matter which would have substantially affected the fact-finding process if the case had proceeded to trial; (3) the guilty plea must have been motivated by this error.

*See also* syl. pt. 2, *State ex rel. Burton v. Whyte*, 163 W.Va. 276, 256 S.E.2d 424 (1979) ("Before an initial finding will be made that counsel acted incompetently with respect to advising on legal issues in connection with a guilty plea, the advise must be manifestly erroneous.").

This Court is "very cautious about finding that counsel has been ineffective." *State v. Bias*, 171 W.Va. 687, 301 S.E.2d 776, 779 (1983). *See also State v. Baker*, 169 W.Va. 357, 287 S.E.2d 497, 502 (1982). Moreover, the burden is upon the convicted criminal defendant to establish ineffective assistance of counsel. Syl. pt. 22, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). *See also Tucker v. Holland*, 174 W.Va. 409, 327 S.E.2d 388, 393 (1985); *State v. Cecil*, 173 W.Va. 27, 311 S.E.2d 144, 148 (1983); *State v. Sheppard*, 172 W.Va. 656, 310 S.E.2d 173, 191 (1983); *State v. Jacobs*, 171 W.Va. 300, 298 S.E.2d 836, 842 (1982); syl. pt. 3, *State ex rel. Wine v. Bordenkircher*, 160 W.Va. 27, 230 S.E.2d 747 (1976); *State ex rel. Owens v. King*, 149 W.Va. 637, 640, 142 S.E.2d 880, 882 (1965); syl. pt. 2, *State ex rel. Stapleton v. Boles*, 149 W.Va. 645, 142 S.E.2d 896 (1965).

The appellant's counsel in this action filed various pre-trial motions, including (1) a motion for a bill of particulars, (2) a motion to obtain a list of State witnesses, (3) a motion for the disclosure of exculpatory evidence and (4) certain motions to produce, inspect and copy certain documents, reports, etc. He evaluated the State's evidence, met with the appellant upon several occasions and recommended the plea of guilty to murder of the first degree. The appellant's counsel then attempted to miti-

gate the appellant's impending sentence by eliciting testimony to the effect that the appellant, in time, would be a good candidate for parole.

The testimony of Hughes and McCamic, two highly respected members of the bar, notwithstanding, we cannot conclude that the actions of the appellant's counsel constituted ineffective assistance of counsel. Stated another way, we find the actions of the appellant's counsel to be neither unreasonable nor prejudicial to the appellant, within the meaning of *Strickland v. Washington, supra.* As stated in the *Strickland* opinion:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

█ In this action, we hold that a defendant in a criminal case, whose voluntary tape recorded confession to police authorities indicated that he was guilty of murder of the first degree under the West Virginia "felony-murder rule," who entered a plea of guilty to murder of the first degree and received a sentence of life imprisonment, without a recommendation of mercy, failed to demonstrate that his conviction and sentence resulted from ineffective assistance of counsel, where his counsel (1) filed various pre-trial motions upon the defendant's behalf, including motions to discover the nature of the State's evidence, (2) evaluated the strength of the evidence against the defendant and met with the defendant upon several occasions prior to recommending the guilty plea and (3) attempted to mitigate the defendant's sentence by eliciting testimony from witnesses who stated that the defendant "turned himself in," helped the authorities locate a revolver used during the crime, and would, in time, be a good candidate for parole. *W.Va. Code,* 61–2–1 [1931].

All other issues raised by the appellant in this action are without merit. In particular, the record demonstrates that the circuit court properly determined the voluntariness of the appellant's plea of guilty to murder of the first degree. Furthermore, we find no basis for relief with respect to the trial judge's listening to the appellant's tape recorded confession.

Accordingly, upon all of the above, the final order of the Circuit Court of Marshall County, denying the appellant relief in habeas corpus, is hereby affirmed.

Affirmed.