365 S.E.2d 69

**STATE of West Virginia**

v.

**Nora K. HARPER.**

**No. 17152.**

Supreme Court of Appeals of West Virginia.

Dec. 18, 1987.

David Johnson, Asst. Atty. Gen., for the State.

Gregory E. Elliott, David L. Stuart, Charleston, for Harper.

McHUGH, Justice:

This case is before this Court upon the appeal of Nora Harper from her conviction by a jury of aiding and abetting first degree murder pursuant to *W.Va. Code*, 61–11–6 [1931].[1]  It arises from an order of the Circuit Court of Kanawha County which denied the appellant's motion for a new trial and sentenced her to life imprisonment with mercy.  This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

## I

During the evening of October 17, 1982, the appellant and Arthur Wiseman were sitting in the appellant's truck which was parked behind the apartment building in which the appellant lived.  The decedent,

---

**1.** *W.Va.Code*, 61–11–6 [1931] provides in pertinent part that "[i]n the case of every felony, every principal in the second degree, and every accessory before the fact, shall be punishable as if he were the principal in the first degree; ..."

Curtis Hughey, and his girlfriend also lived in the same building.[2]

While the appellant and Wiseman were waiting for a friend to join them, Wiseman asked the appellant to go to her apartment to obtain a shotgun and shells. The appellant complied and gave Wiseman both the shotgun and shells as he had requested. At this time, the appellant proceeded to a local convenience store to purchase some cigarettes and beer. Upon her return, she rejoined Wiseman, and the couple was ultimately joined by another companion.

A short time later, Curtis Hughey and his girlfriend left a nearby convenience store to return to their apartment building. As the couple proceeded towards the rear entrance, Wiseman yelled at the decedent and indicated that he wanted to talk to him. As the decedent approached in response to his demand, Wiseman shot and killed Hughey.

After the shooting, Wiseman threw the shotgun into the appellant's truck and fled the scene on foot. The appellant, who was sitting on the driver's side at the time of the shooting, drove from the scene. After driving a few blocks, the appellant encountered Wiseman, and the couple drove to a bar nearby. Wiseman asked the bartender there if he could leave the shotgun in the bar, and the bartender agreed. Appellant then brought the gun in from the truck.

Based upon an eyewitness' description of the appellant's truck, the police traced the vehicle to the bar. Upon the police's arrival, Wiseman ran downstairs, and the bartender denied he was present on the premises. The police then arrested the appellant and arrested Wiseman shortly thereafter.

From this set of facts, the State argued that this was a "lying in wait" case and the trial court instructed the jury accordingly. The trial court, over the appellant's objection, gave the jury three options in regard to its verdict: guilty of murder in the first degree, guilty of murder in the first degree with mercy, and not guilty.

## II

■ The first issue before us in this appeal is whether the trial court erred in refusing to instruct the jury that it may return a verdict of second degree murder or voluntary manslaughter.[3]

The appellant's primary contention is that there was sufficient evidence by the testimony that she had no knowledge that Wiseman had planned to shoot the decedent and that she was entitled to instructions on the offenses of second degree murder or voluntary manslaughter because of that evidence. The State, on the other hand, principally argues the evidence adduced at trial did not support giving the appellant's proposed instructions on second degree murder or voluntary manslaughter.

*W.Va. Code*, 61–2–1 [1987] defines first degree murder as follows: "Murder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, sexual assault, robbery or burglary, is murder of the first degree."

We have previously recognized that "W.Va. Code, 61–2–1 enumerates three broad categories of homicide constituting first degree murder: (1) murder by poison, lying in wait, imprisonment, starving; (2) by any wilful, deliberate and premeditated killing; (3) in the commission of, or attempt

---

**2.** Evidence adduced at trial established that there had been some disputes between the decedent, the appellant, and Wiseman prior to the victim's death. According to testimony elicited during the appellant's trial, the appellant's son had made improper sexual advances toward the decedent's girlfriend, resulting in a scuffle between the decedent and the appellant's son. Subsequently, the appellant and Wiseman assaulted the decedent, and after this occurrence, the parties did not speak.

**3.** Second degree murder is the unlawful killing of another with malice. *State v. Slonaker*, 167 W.Va. 97, 102, 280 S.E.2d 212, 215 (1981); *see also State v. Hatfield*, 169 W.Va. 191, 198, 286 S.E.2d 402, 407 (1982); *State v. Starkey*, 161 W.Va. 517, 523, 244 S.E.2d 219, 223 (1978). In the case before us, the uncontroverted facts would not warrant a voluntary manslaughter instruction. *See, e.g., State v. Humphrey*, 177 W.Va. 264, 270 n. 8, 351 S.E.2d 613, 619 n. 8 (1986).

to commit, arson, rape, robbery or burglary." Syl. pt. 6, *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978).[4]

In *State v. Abbott*, 8 W.Va. 741, 770–72 (1875), this Court recognized that the language "murder by poison, lying in wait, imprisonment, starving" does not require that premeditation or a specific intent to kill has to be shown, but to elevate the homicide to first degree murder, a killing with malice must be proved and one of the four enumerated acts must be established: "If it be proved that the killing was of such a character that, under ordinary circumstances, it would have been murder at common law, and the fact of lying in wait exist, that fact will make it a case of murder in the first degree." *Id.* 8 W.Va. at 770–71. *See also State v. Sims*, 162 W.Va. at 221–22, 248 S.E.2d at 840.[5]

The elements constituting "lying in wait" were discussed by this Court in *State v. Abbott, supra*, 8 W.Va. at 769. There, this Court quoted approvingly the language of the Supreme Court of Tennessee in *Riley v. State*, 28 Tenn. (9 Hum.) 646, 651 (1849) and noted:

> '[T]o constitute lying in wait, three things must concur, ...: waiting[,] watching, and secrecy; and that these facts must be established beyond a reasonable doubt, to authorize the conclusion that there was lying in wait; that if they should be of the opinion there was such lying in wait, and that the fatal blow was given by the [accused], ... for the purpose of inflicting some great bodily harm upon the deceased, ... it would be murder in the first degree.'

The language in *Abbott* is consistent with other interpretations of what constitutes "lying in wait." Generally, "lying in wait" as a legal concept has both mental and physical elements. The mental element is the purpose or intent to kill or inflict bodily harm upon someone; the physical elements consist of waiting, watching and secrecy or concealment. 40 Am.Jur.2d *Homicide* § 49, at 339–40 (1968); annotation, *Homicide: What Constitutes "Lying in Wait,"* 89 A.L.R.2d 1140, § 1[b] (1963). *See generally* 2 C. Torcia, *Wharton's Criminal Law* § 141, at 190 (14th ed. 1979); 40 C.J.S. *Homicide* § 31, at 880 (1944).

■ Accordingly, in order to sustain a conviction for first degree murder by lying in wait pursuant to *W.Va. Code*, 61-2-1 [1987], the prosecution must prove that the accused was waiting and watching with concealment or secrecy for the purpose of or with the intent to kill or inflict bodily harm upon a person.

Although this issue was not briefed by either party, and both the appellant and the State appear to assume such, this appeal raises a fundamental question: whether second degree murder is, in fact, a lesser included offense of murder perpetrated by lying in wait.

Where a prosecution for homicide is upon an indictment charging murder by means of lying in wait, poison, starving or imprisonment, or one committed in the perpetration of or attempt to perpetrate a felony— all modes of killing that are categorized by statute to constitute murder in the first degree—there is a split of authority as to the propriety of the trial court instructing the jury on any degree of homicide less than murder in the first degree. *See* 40 Am.Jur.2d *Homicide* § 544, at 803 (1968).[6]

---

**4.** We have also noted that *W.Va.Code*, 61–2–1 [1987] was not designed primarily to define the substantive elements of the particular types of first degree murder, including murder by poison, lying in wait, imprisonment, and starving as well as felony-murder, but rather was enacted to categorize the common law crimes of murder for the purpose of setting degrees of punishment. Syl. pt. 5, *State v. Sims, supra.*

**5.** We recently reaffirmed this principle when construing the third category of first degree murder, felony-murder, enumerated in *W.Va.*

*Code*, 61–2–1 [1987], and determined that "[t]he crime of felony-murder in this State does not require proof of the elements of malice, premeditation or specific intent to kill...." Syl. pt. 7, in part, *State v. Sims*, 162 W.Va. 212, 248 S.E.2d 834 (1978); *accord*, syl. pt. 3, in part, *State ex rel. Levitt v. Bordenkircher*, 176 W.Va. 162, 342 S.E.2d 127 (1986).

**6.** *See generally* annotation, *Absence of Evidence Supporting Charge of Lesser Degree of Homicide as Affecting Duty of Court to Instruct as to, or Right of Jury to Convict of, Lesser Degree*, 21

A few courts have determined that because it is the province of the jury to determine the degree of homicide of which the defendant is guilty, the jury has the right to convict for a lesser degree than first degree murder. *See, e.g., Houlton v. State,* 254 Ala. 1, 48 So.2d 7 (1950); *Montague v. State,* 240 Ark. 162, 398 S.W.2d 524 (1966); *Brown v. State,* 124 So.2d 481 (Fla.1960); *State v. Phinney,* 13 Idaho 307, 89 P. 634 (1907).

Conversely, a number of jurisdictions have held that in a prosecution for homicide by starving, imprisonment or poisoning, or in the perpetration of or attempt to perpetrate a felony or other act designated in the statute defining murder in the first degree, the jury must either find the defendant guilty of murder in the first degree or acquit him. *See, e.g., People v. Imbler,* 57 Cal.2d 711, 371 P.2d 304, 21 Cal.Rptr. 568 (1962); *State v. Reed,* 39 N.M. 44, 39 P.2d 1005 (1934); *Richmond v. State,* 554 P.2d 1217 (Wyo.1976).

Several courts have considered whether, in a prosecution for murder by lying in wait, the jury should receive instructions on the lesser included offense of second degree murder. *See, e.g., People v. Repke,* 103 Mich. 459, 61 N.W. 861 (1895); *State v. Wiseman,* 178 N.C. 784, 101 S.E. 629 (1919); *White v. State,* 30 Tex.App. 652, 18 S.W. 462 (1892). In those cases, the courts have held that such an instruction was unwarranted under the particular circumstances of the individual case. Importantly, a common thread running through each of those "lying in wait" cases is that the evidence adduced at trial was not sufficient to warrant that a lesser included offense instruction be considered by the jury. *People v. Repke,* 103 Mich. at 468, 61 N.W. at 863–64; *State v. Wiseman,* 178 N.C. at 795–96, 101 S.E. at 634; *White v. State,* 30 Tex.App. at 656, 18 S.W. at 463.

In *State v. Abbott, supra,* this Court reversed the defendant's conviction for first degree murder and determined that the evidence before the trial court did not sufficiently prove that the killing was murder by lying in wait. The Court remanded the case for a new trial, holding:

When it is proven *prima facie* that a murder has been committed, and it is claimed from the evidence that the crime committed is murder in the first degree, because it is murder by 'lying in wait,' it is for the jury to determine, from all the circumstances and evidence, whether the murder is murder 'by lying in wait,' or whether the murder is murder in the first degree, for any cause embraced by the statute, or murder in the second degree, or voluntary or involuntary manslaughter, ...

8 W.Va. at 758. The above language in *Abbott, supra* suggests that second degree murder is a lesser included offense of murder by lying in wait. It was also implicitly recognized in *Abbott, supra,* that murder perpetrated by lying in wait is a difficult crime to prove. *See* 8 W.Va. at 757–58.

In the case before us, the appellant was tried as an aider and abettor, a principal in the second degree. A statement of the requisite involvement to justify convicting an accused of aiding and abetting the commission of a criminal offense is found in *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938), where Judge Learned Hand stated that the aider or abettor must "in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek[s] by his action to make it succeed." In *State ex rel. Brown v. Thompson,* 149 W.Va. 649, 142 S.E.2d 711, *cert. denied,* 382 U.S. 940, 86 S.Ct. 392, 15 L.Ed.2d 350 (1965), *overruled on other grounds, State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980), we made clear that "[a] person is

---

A.L.R. 603, at 628 (1922), supplemented by 27 A.L.R. 1097, at 1100 (1923), 102 A.L.R. 1019, at 1030 (1936).

In the context of felony murder, however, the inquiry is distinguishable from the analysis applied in cases involving the other enumerated modes of first degree murder. Where there is a

killing committed in the perpetration of or attempt to perpetrate a felony, a lesser included offense instruction may be warranted where the evidence disputes commission of the underlying felony. *See, e.g., Green v. State,* 475 So.2d 235, 237 (Fla.1985).

guilty as a principal in the second degree when he aids and abets the actual perpetrator or the principal in the first degree, in the commission by such perpetrator of a common law offense which is also a statutory crime...." 149 W.Va. at 654, 142 S.E.2d at 715.

■ It is well established that in order for a defendant to be convicted as an aider or abettor, and thus a principal in the second degree, the prosecution must demonstrate that he or she shared the criminal intent of the principal in the first degree. *Nye & Nissen v. United States,* 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949); *United States v. Peoni, supra; United States v. Winstead,* 708 F.2d 925 (4th Cir. 1983); *United States v. Beck,* 615 F.2d 441 (7th Cir.1980); *Bosnick v. State,* 248 Ark. 846, 454 S.W.2d 311 (1970); *Harper v. State,* 155 Ga.App. 764, 272 S.E.2d 736 (1980); *State v. Lord,* 42 N.M. 638, 84 P.2d 80 (1938); *Jahnke v. State,* 692 P.2d 911 (Wyo.1984); 21 Am.Jur.2d *Criminal Law* § 171 (1981); 22 C.J.S. *Criminal Law* § 87 (1961). Of course, we also recognize that the defendant is not required to possess the identical intent as the principal in the first degree. *United States v. Beck, supra,* at 448–49. Several courts have held that one who aids and abets in a homicide may be charged with and convicted of a greater or lesser degree offense than the principal in the first degree, depending on the mental state established at trial. *See, e.g., Bosnick v. State,* 248 Ark. at 851, 454 S.W.2d at 314–15; *State v. McAllister,* 366 So.2d 1340, 1343 (La.1978); *State v. Lord,* 42 N.M. at 657–58, 84 P.2d at 92; *Jahnke v. State,* 692 P.2d at 922.

It is fundamental that "a trial court must give an instruction for a lesser included offense when evidence has been produced to support such a verdict." *State v. Stalnaker,* 167 W.Va. 225, 227, 279 S.E.2d 416, 417 (1981). *See also State v. Wallace,* 175 W.Va. 663, 666, 337 S.E.2d 321, 324 (1985); *State v. Cobb,* 166 W.Va. 65, 71, 272 S.E.2d 467, 471 (1980); *State v. Wayne,* 162 W.Va. 41, 46, 245 S.E.2d 838, 842 (1978).

■ In the case before us, there is sufficient evidence by the appellant's testimony, as well as the testimony of Arthur Wiseman, that the appellant was unaware that Wiseman was preparing to inflict bodily harm upon or kill the decedent. She thus could argue that she did not share his criminal intent. This evidence disputes the requisite mental element of intent to kill or inflict bodily harm upon the victim. We are of the opinion that the jury in this case rationally could have concluded that the appellant was not guilty of aiding and abetting murder by lying in wait, but was guilty of the crime of second degree murder. The appellant was entitled to present her theory of the case to the jury through the instruction which she offered. *See* syl. pt. 3, *State v. Foley,* 128 W.Va. 166, 35 S.E.2d 854 (1945); *see also* syl. pt. 1, *Danco, Inc. v. Donahue,* 176 W.Va. 57, 341 S.E.2d 676 (1985). From the facts presented, the jury may well have accepted her theory that she did not aid and abet murder perpetrated by lying in wait.

Accordingly, we hold that where, in the prosecution of first degree murder by lying in wait, there is sufficient evidence before the trial court that the defendant was unaware that the principal in the first degree was preparing to kill or inflict bodily harm upon the victim, the trial court should also instruct the jury on the offense of second degree murder if the elements of that offense are present. The trial court erred in not doing so in this case.

### III

Another issue before us is whether the trial court erred in denying the appellant's pretrial motion to prohibit the introduction of photographs of the victim after his death. The appellant contends that the photographs were gruesome and unduly prejudicial. She maintains that the photographs aroused the jury's passions and that the resulting prejudice outweighed any probative value they might have had in the State's case. We do not agree.

In syllabus point 1 of *State v. Rowe,* 163 W.Va. 593, 259 S.E.2d 26 (1979), we enunciated the standard with regard to the admission of gruesome photographs at trial:

Gruesome photographs are not *per se* inadmissible, but they must have something more than probative value, because by the preliminary finding that they are gruesome, they are presumed to have a prejudicial and inflammatory effect on a jury against a defendant. The State must show that they are of essential evidentiary value to its case.

*Accord, State v. Trail,* 174 W.Va. 656, 660, 328 S.E.2d 671, 675 (1985); syl. pt. 2, *State v. Headley,* 168 W.Va. 138, 282 S.E.2d 872 (1981); syl. pt. 6, *State v. Clawson,* 165 W.Va. 588, 270 S.E.2d 659 (1980).

We have examined the two photographs objected to by the appellant and agree with the trial court that they are not gruesome under the standards announced in *State v. Rowe, supra,* and elaborated on in *State v. Clawson, supra.* In syllabus point 6 of *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982), we held: "In order for photographs to come within our gruesome photograph rule established in *State v. Rowe,* [163] W.Va. [593], 259 S.E.2d 26 (1979), there must be an initial finding that they are gruesome." *See also* syl. pt. 4, *State v. Adkison,* 175 W.Va. 706, 338 S.E.2d 185 (1985).

■ The photographs involved in the case before us depict the victim's body immediately after his death and prior to his autopsy.[7] The first photograph shows the victim's body at the scene of the murder. The second photograph shows the external wound to the victim's chest. This photograph illustrates the scattering of shotgun pellets, as well as the location, size and type of wound sustained by the victim. The photographs are black and white, rather than in color, *see State v. Rowe,* 163 W.Va. at 595, 259 S.E.2d at 28; they do not depict autopsy results; and the second photograph displays only the victim's shotgun wounds. *See State v. Haddox,* 166 W.Va. 630, 635–36, 276 S.E.2d 788, 792 (1981).

Accordingly, we are of the opinion that the trial court did not err in admitting the photographs into evidence at the appellant's trial.

## IV

■ The appellant also contends that she was denied her constitutional rights to due process and a fair trial by the remarks of the prosecuting attorney during closing argument. During closing argument, the prosecuting attorney vouched for the veracity of his witnesses while suggesting that the appellant's witnesses were lying. *See State v. Beckett,* 172 W.Va. 817, 823, 310 S.E.2d 883, 889 (1983). The appellant further asserts that it was reversible error for the prosecution to suggest that the victim could not testify and to imply that the people, members of the jury, were its clients. The appellant contends that these comments unfairly influenced the jury.

■ In syllabus point 5 of *State v. Ocheltree,* 170 W.Va. 68, 289 S.E.2d 742 (1982), we held: "A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." *See also* syl. pt. 7, *State v. Beckett, supra;* syl. pt. 5, *State v. Sparks,* 171 W.Va. 320, 298 S.E.2d 857 (1982); syl. pt. 7, *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982). We do not believe these remarks were sufficiently prejudicial to constitute reversible error.[8]

■ The appellant maintains that the trial court erred in refusing to prohibit testimony concerning her flight from the scene of the crime. It is fundamental that evidence of flight is admissible at a criminal trial. *State v. Payne,* 167 W.Va. 252, 265–66, 280 S.E.2d 72, 79–80 (1981) (collecting cases at note 2). In syllabus point 6 of *Payne,* we recognized the trial judge, upon

---

7. Contrary to the appellant's assertions, after viewing State's Exhibit 15 we are of the opinion that the photograph was taken before, rather than during, the autopsy.

8. In any event, the appellant has waived any error to remarks made by the prosecutor during

closing argument because the appellant's counsel failed to make a timely objection. A failure to make a timely and proper objection during trial constitutes a waiver of the right to raise the question on appeal. Syl. pt. 2, *State v. Trogdon,* 168 W.Va. 204, 283 S.E.2d 849 (1981).

request by either the State or the defendant, should hold an *in camera* hearing to determine whether the probative value of the evidence of flight outweighs its possible prejudicial effect. The trial court held such a hearing in the case before us and we agree that the probative value of the evidence clearly outweighed its possible prejudicial effect and such evidence was properly admitted.

■ We further hold that the trial court did not err in denying the appellant's motion for a bill of particulars. "Subject to certain exceptions, pretrial discovery in a criminal case is within the sound discretion of the trial court." Syl. pt. 8, *State v. Audia*, 171 W.Va. 568, 301 S.E.2d 199, *cert. denied*, 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983). This Court has held that it is not error to deny a motion for a bill of particulars concerning whether a defendant is to be tried as a principal in the first or second degree, at least where the prosecutor maintains an "open-file policy" with defense counsel. *State v. Ashcraft*, 172 W.Va. 640, 646–647, 309 S.E.2d 600, 606–07 (1983). It does not appear that the appellant in this case can thus legitimately claim prejudicial surprise as a result of nondisclosure of evidence by the State.

For the reasons set forth in sections III and IV of this opinion, we affirm the trial court's order denying a new trial based upon the admission of photographs of the victim's body, the alleged prejudicial remarks by the prosecutor, the admission of flight evidence and the denial of the motion for a bill of particulars. On the other hand, for the reasons set forth in section II of this opinion, we reverse the portion denying a new trial on the basis that there was not sufficient evidence to warrant a second degree murder instruction, and we remand for further proceedings consistent with this opinion.

Affirmed, in part; reversed, in part, and remanded.