465 S.E.2d 892

**STATE of West Virginia ex rel. Donald E. BESS, Jr., Petitioner Below, Appellant,**

v.

**Carl E. LEGURSKY, Warden, West Virginia Penitentiary, Respondent Below, Appellee.**

No. 22830.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 1995.

Decided Dec. 8, 1995.

---

**438**

Paul O. Clay, Jr., Fayetteville, for Appellant.

L. Eugene Dickinson, Senior Assistant Attorney General, Michelle T. Mensore, Assistant Attorney General, Charleston, for Appellee.

PER CURIAM:

This is an appeal by Donald E. Bess, Jr. (hereinafter "the Appellant"), from a July 6, 1994, denial of a writ of habeas corpus by the Circuit Court of Fayette County. The Appellant contends that he was denied effective assistance of counsel, that his confessions were not voluntary, and that evidence was insufficient to sustain the jury verdict of guilty of first degree murder without mercy. We agree that trial counsel was ineffective and grant the Appellant a new trial.

I.

FACTS AND PROCEDURAL HISTORY

On October 27, 1989, the Appellant was arrested and charged with daytime burglary and murder in connection with the August 30, 1989, stabbing death of Mrs. Marjorie

Riley in her home in Fayette County, West Virginia. Evidence leading to the arrest of the Appellant included the recovery of a pistol and some coal company scrip which had been stolen from Mrs. Riley's home. The individuals possessing such items informed the police that the pistol and the scrip had been sold to them by the Appellant. The Appellant was apprehended near Riverside, Kanawha County, West Virginia, and was transported to Charleston where he was fingerprinted and informed of his rights.[1] Although a magistrate was present at the Kanawha County Magistrate's Office, the arraignment was delayed, and the Appellant was taken to the Kanawha County Jail accompanied by five police officers. While in the bathroom after the fingerprinting, Corporal H.M. Canterbury confronted the Appellant with the evidence against him. Corporal H.M. Canterbury also informed the Appellant that he had spoken with the Appellant's parents and that they had said "Please don't let my son get killed." The Appellant then cried and admitted that he had killed Mrs. Riley.[2] Stating that he wished to make a more complete statement, the Appellant was again advised of his rights, and he signed a waiver of the right to remain silent. He then provided a complete confession to the robbery and murder. In that confession, he related that he had broken into Mrs. Riley's home, had stolen some coal company scrip and a gun, and had stabbed Mrs. Riley when she returned home unexpectedly.

On October 30, 1989, attorney Steve Vickers was appointed to represent the Appel-

lant. Prior to listening to the taped confession, the Appellant told Mr. Vickers that he had burglarized the home but had not killed Mrs. Riley. Upon listening to the tape in the presence of Mr. Vickers and police officers, counsel questioned the Appellant in the presence of the police regarding the truth of the confession.

On November 2, 1989, Mr. Vickers and the Appellant accompanied two deputies to the murder scene in an attempt to locate the murder weapon. Mr. Vickers encouraged his client to participate in the police investigation despite the fact that no formal plea arrangement had yet been made. During that trip, a second taped confession was obtained through questioning by both the deputies and Mr. Vickers. The Appellant informed the police and his counsel of the location of his car and indicated that he thought he had thrown the murder weapon while running up a hill. However, no weapon was recovered.

On January 12, 1990, the Appellant first informed Mr. Vickers that the original taped confession had been coerced by Corporal Canterbury.[3] Prior to a March 5, 1990, trial, the lower court conducted an in camera hearing and determined that the two tape-recorded confessions were admissible at trial. The jury thereafter found the Appellant guilty of daytime burglary and murder in the first degree.[4]

The Appellant appealed that conviction to this Court, and we affirmed the murder conviction in *State v. Bess*, 185 W.Va. 290, 406 S.E.2d 721 (1991).[5] We reserved ruling on the ineffective assistance of counsel claim due

1. The officers stopped at the State Police Headquarters in Glasgow, West Virginia, for approximately one hour prior to driving to Charleston.

2. The Appellant testified during the suppression hearing and at trial that he thought Corporal Canterbury was holding a gun at his back when he made the confession. The Appellant also testified that Corporal Canterbury had threatened to kill him if he did not confess. Corporal Canterbury denied making the threat or having a gun in his possession in the bathroom.

3. Prior to trial, the Appellant became dissatisfied with counsel's ability to provide information to the Appellant and contacted the lower court to

request a copy of the transcript of his preliminary hearing. The Appellant also contacted the West Virginia State Bar in February 1990 to complain about his counsel. On March 1, 1990, the Appellant filed a formal ethics complaint against Mr. Vickers.

4. The burglary conviction was later overturned on May 23, 1990, because it was the underlying felony for the felony murder conviction.

5. While we did affirm the lower court's decision with regard to the admissibility of the confession in the first *Bess* opinion, we did not address the matter of ineffective assistance of counsel and

to the inadequacy of the record. A post-conviction habeas corpus hearing was held on September 3, 1993, and September 7, 1993, and the lower court denied the relief on July 6, 1994. The Appellant now returns to this Court advancing his argument that trial counsel was ineffective, that his confession was coerced, and that the evidence was insufficient to sustain the conviction.

## II.

### DISCUSSION

■ To prevail on a claim of ineffective assistance of counsel under Article III, Section 14 of the West Virginia Constitution, the defendant must establish that, in light of all the circumstances, counsel's performance fell below an objective standard of reasonableness and that the resulting prejudice deprived the defendant of a fair trial. In syllabus point five of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), we explained the following:

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

194 W.Va. at 6, 459 S.E.2d at 117. In syllabus point six of *Miller*, we continued:

In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reason-

allowed the Appellant to develop a record in a

able lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id.* at 6–7, 459 S.E.2d at 117–18. We also stated in syllabus point twenty-two of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), that "[o]ne who charges on appeal that his trial counsel was ineffective and that such resulted in his conviction, must prove the allegation by a preponderance of the evidence." *Id.* at 643, 203 S.E.2d at 449.

■ Thus, under the standard enunciated in *Strickland* and *Miller*, to show constitutionally ineffective assistance of counsel, as the Appellant alleges, he must identify specific erroneous acts or omissions that in the context of the entire trial or other critical stages of the criminal proceedings, amounted to ineffective assistance, and he must show that such deprivation prejudiced his defense. In the present case, we are compelled to agree with the contention of the Appellant that trial counsel was ineffective and that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the trial would have been different. Counsel committed various errors throughout his representation which rendered his assistance ineffective and justify the granting of a new trial to the Appellant.

■ First, the Appellant complains that his counsel was ineffective in investigating the facts and circumstances leading up to his arrest generally and in his failure to investigate the circumstances leading up to his initial confession specifically. In syllabus point three of *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995), we stated as follows:

The fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a mini-

habeas proceeding.

mum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation.

195 W.Va. at 320, 465 S.E.2d at 422.

■■■ In considering a request to reverse a conviction based on an alleged violation of the right to effective assistance of counsel at certain pretrial proceedings, we need address an additional issue, *i.e.*, the alleged violation must have occurred at a critical stage of the proceedings at which the right to counsel had attached. In syllabus point six of *Daniel*, we stated as follows:

A defendant can only obtain reversal on ineffective assistance of counsel grounds if the error complained of occurred at a critical stage in the adversary proceedings. This is true because Section 14 of Article III of the West Virginia Constitution and the Sixth Amendment to the United States Constitution guarantee the right to counsel only at critical stages.

195 W.Va. at 317, 465 S.E.2d at 419. It is settled that a criminal defendant acquires "the right to counsel to assert the protections of the West Virginia Constitution in all critical stages of the criminal proceedings against him." *Id.* at 321, 465 S.E.2d at 423. The test for determining whether a particular event is a critical stage is "whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial...." *United States v. Wade*, 388 U.S. 218, 227, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967). In undertaking this inquiry, a reviewing court "must analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Id;*

*accord Coleman v. Alabama*, 399 U.S. 1, 7, 90 S.Ct. 1999, 2002, 26 L.Ed.2d 387 (1970). Utilizing this standard, we have no difficulty declaring that a pretrial proceeding, such as a custodial interrogation that takes place after arrest and the appointment of counsel, is a critical stage of the criminal proceedings giving rise to the right of effective assistance of counsel because precious rights of the accused may be lost or sacrificed at such time. Indeed, we can think of no more important event in the criminal proceedings than when the accused is custodially interrogated.

■■■ After thoroughly reviewing the record, we are of the opinion that had counsel competently investigated the circumstances surrounding the Appellant's arrest, presentment, and initial confession to Corporal Canterbury in the bathroom, he could potentially have provided the Appellant with a more substantial basis for challenging the admissibility of the first taped confession. Mr. Vickers' investigation, according to the facts we have before us, was insufficient to prepare him to challenge the admissibility of that first confession. As the Supreme Court of California noted in *In re Neely*, 6 Cal.4th 901, 26 Cal.Rptr.2d 203, 864 P.2d 474 (1993), ineffective assistance of counsel can be established by showing that counsel failed to investigate a factual basis for suppression of a tape recording. *Id.* 26 Cal.Rptr.2d at 213, 864 P.2d at 484. In that case, adequate investigation would have presented counsel with the opportunity to challenge the admissibility of the recording. *Id.* 26 Cal.Rptr.2d at 214, 864 P.2d at 485. Counsel in the present case did move to suppress the first tape-recorded confession, but later admitted at the habeas hearing that he was unaware of all the facts and circumstances surrounding the taking of that first tape-recorded confession.[6] A command of all facts and circum-

---

**6.** Counsel's testimony at the habeas proceeding indicated that he had never discussed the circumstances of the Appellant's arrest with the Appellant. He conceded that he was unaware of the allegations of irregularity in presentment until the habeas hearing. He was not aware of the sequence of the arrest by police, and he did not consider the fact that at the time of the Appellant's first confession, he had stayed in his car for a few nights, had not eaten, had recently written suicide notes, and had been in custody for several hours prior to that confession. All this information was in the open file of the prosecutor, but counsel failed to avail himself of such

stances surrounding a confession is essential to adequate representation. As the United States Supreme Court stated in *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), the ultimate test of voluntariness of a confession is whether it is the product of an essentially free and unconstrained choice by its maker. *Id.* at 7, 84 S.Ct. at 1493. A determination of voluntariness must be premised upon the totality of the circumstances, both the characteristics of the accused and the details of the interrogation. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

The Appellant next complains that counsel placed him in a self-incriminatory situation by interrogating him and eliciting inculpatory statements in the presence of deputies. The Appellant and Mr. Vickers listened to the tape-recorded confession in the presence of the deputies, and thereafter Mr. Vickers questioned the Appellant, still in the presence of the deputies, with regard to the truth of that statement. Mr. Vickers subsequently encouraged the Appellant to cooperate in the police investigation even though Mr. Vickers had not secured any definite plea arrangement.[7] Perhaps even more egregious was Mr. Vickers' encouragement of his client to travel to the purported crime scene on November 2, 1989, with police officers, and Mr. Vickers' own participation in the questioning of his client during that trip. Counsel actually asked questions such as "Are we going to where your car is?" and "Why don't you show us where the car was." Specific testimony about the murder weapon was elicited during that trip. The Appellant stated that he could not remember exactly what weapon he used to kill Mrs. Riley and explained that it could have been a butcher knife or a letter opener. In response to his own counsel's questioning, he stated that it was something sharp and metallic, shiny all over, and not heavy.

The Appellant also asserts that Mr. Vickers made statements at trial constituting unsworn testimony in contradiction of his client by explaining to the lower court that it was unlikely that Corporal Canterbury threatened the Appellant with a gun because guns were customarily not permitted in interrogation areas. The Appellant also maintains that counsel was ineffective at trial by failing to adequately present available exculpatory evidence. Examples of such include counsel's failure to utilize a police pathological report which conflicted with the Appellant's first confession as it pertained to the time of death.[8] The Appellant also contends that counsel failed to utilize forensic reports showing that none of the many shoe prints and fingerprints at the scene matched the Appellant.[9] Moreover, counsel testified at the habeas proceeding that he was unaware, until one day prior to that habeas hearing, of

---

information. While the voluntariness of the confession was made the subject of a suppression hearing, counsel had not sufficiently investigated the underlying facts to present a complete depiction of the circumstances surrounding the confession, and even challenged his own client's credibility during suppression.

7. The State contends that counsel and the Appellant had agreed to implement a strategy of cooperation in order to gain an agreement to entry of a plea to something less that first degree murder without mercy. Deputy C.D. Moses had indicated to Mr. Vickers that he personally would not object to the entry of a plea of first degree murder with a recommendation of mercy if the Appellant would cooperate with the police in their continuing investigation. Such a plea agreement was, in fact, later offered by the State, but the Appellant insisted that the matter be tried.

8. Based upon the contents of her stomach, the medical examiner estimated Mrs. Riley's death at three to four hours after she had eaten her last meal at approximately 2:00 p.m. on August 30, 1989. The examiner estimated the time of death at approximately 5:30 to 6:00 p.m. that evening. The Appellant's first tape-recorded statement indicated that he had entered Mrs. Riley's home in the morning right after he awakened.

9. The Appellant also asserts that communication between him and Mr. Vickers was so insufficient that the Appellant did not understand whether he had been provided a preliminary hearing and whether he was entitled to a bond hearing. The Appellant also contends that the breakdown in communication and the filing of an ethics complaint contributed to the ineffective assistance of counsel. The Appellant also maintains that counsel failed to adequately investigate potential witnesses, failed to address issues of chain of custody of the objects allegedly stolen by the Appellant, and failed to provide jury instructions. Counsel submitted no jury instructions and did not review the prosecutor's jury instructions until

any irregularity in the presentment of the Appellant after his arrest.

Similarly, but for counsel's own error in encouraging his client to accompany police to the scene and in actively participating in the interrogation, the second taped confession would never have been taken. Counsel's error in actively participating in the interrogation of the accused during the second taped confession is accentuated by examining the proper role of counsel present during an interrogation and comparing that to the role played by counsel in the present case. The United States Supreme Court, in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), emphasized the advantages of having counsel present during questioning of a defendant. The Court explained as follows:

> That counsel is present when statements are taken from an individual during interrogation obviously enhances the integrity of the fact-finding processes in court. The presence of an attorney, and the warnings delivered to the individual, enable the defendant under otherwise compelling circumstances to tell his story without fear, effectively, and in a way that eliminated the evils in the interrogation process.

384 U.S. at 466, 86 S.Ct. at 1623–24. The activities of counsel in the present case had quite the opposite effect, and his questioning actually enhanced the prosecution's case against the Appellant. The Appellant's own statements, in both taped confessions, were the evidence upon which the conviction rests. *See Harris ex rel. Ramseyer v. Wood*, 64 F.3d 1432, 1436–37 (9th Cir.1995) (finding counsel deficient where counsel permitted accused to make damaging statements to the prosecutor in absence of a plea or immunity agreement). Absent those confessions, or either of them individually, the prosecution's case would have been much weaker, and there is a reasonable probability that the result of the proceedings would have been different, and the Appellant could have prevailed.

immediately prior to the case's submission to the

Counsel's performance was also deficient to the extent that he essentially presented his own statement to the lower court in contradiction of the Appellant's statement that Corporal Canterbury had a gun during their encounter in the bathroom. While, as the State argues, that particular transgression may not have prejudiced the Appellant, it is another indication of counsel's gross misunderstanding of his role in the defense of the accused. His failure to adequately utilize exculpatory information such as the absence of the Appellant's fingerprints at the scene and the potentially unreliable chain of custody of the items allegedly stolen by the Appellant is also indicative of his ineffectiveness.

This case is similar to *Alston v. Garrison*, 720 F.2d 812 (4th Cir.1983), *cert. denied*, 468 U.S. 1219, 104 S.Ct. 3589, 82 L.Ed.2d 886 (1984). In a slightly different context, the court in *Alston* observed that "[f]ew mistakes by criminal defense counsel are so grave as the failure to protest evidence that the defendant has exercised his right to remain silent." 720 F.2d at 816. "Failure to oppose the admission of such evidence plainly falls beneath the 'range of competence demanded of attorneys in criminal cases.'" *Id.* at 817 (quoting *Marzullo v. Maryland*, 561 F.2d 540, 543 (4th Cir.1977), *cert. denied*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978)). Additionally, the court noted that the failure to object to prejudicial statements made by the defense counsel at a pretrial line-up also constituted ineffective assistance of counsel. 720 F.2d at 817, n. 3. In addressing counsel's statement congratulating the police for conducting a quality lineup, the court in *Alston* stated as follows:

> While Alston's counsel had no business making such a statement in the first place, the real damage resulted from his failure to object when the statement was presented at trial. By this evidence, counsel appeared to vouch for the accuracy of the lineup which inculpated his client. The very essence of the adversarial system is violated by a performance such as this one by counsel.

*Id.*

In the case sub judice, Appellant's counsel acted not as an advocate for his client but

jury.

rather as an agent for the police. Truly, it can be said that the Appellant would have been better off without counsel. The constitutional guarantee of effective assistance of counsel requires much more than was provided here. The right to effective assistance of counsel is one of the most fundamental and cherished rights guaranteed by our Constitution. *See generally Johnson v. Zerbst,* 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938).

 The prejudice prong of ineffective assistance of counsel is clearly met in this case. While a defendant must ordinarily prove deficient performance by counsel coupled with a showing of prejudice in order to prevail on an ineffective assistance of counsel claim, there is a narrow class of cases where the particular circumstances "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984) (footnote omitted). If the Appellant can prove such circumstances actually existed, prejudice will be presumed. We stated as follows in syllabus point five of *Daniel:*

> In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995), but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.

195 W.Va. at 317, 465 S.E.2d at 419.

There is no question that the sort of conduct shown here, *i.e.,* counsel conducting an interrogation of client for benefit of police, represents a paradigmatic example of the sort of breakdown in the adversarial process that triggers a presumption of prejudice. The focus must be on whether, in light of the

entire record, the attorney remained a legal advocate who acted with "[u]ndivided allegiance and faithful, devoted service" to the Appellant. *von Moltke v. Gillies,* 332 U.S. 708, 725, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948). We hold that counsel failed to meet that standard.[10]

Based upon the foregoing, we reverse the decision of the lower court and grant the Appellant a new trial.

Reversed and remanded.

---

**10.** Even if we were to apply the *Strickland/Miller* analysis that an accused must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different, we would reverse this conviction because the Appellant has proven prejudice as a result of the cumulative impact of multiple deficiencies in defense counsel's performance.