469 S.E.2d 7

**STATE of West Virginia ex rel. Matt Joseph STROGEN, Petitioner,**

**v.**

**George TRENT, Warden, Mt. Olive Correctional Center, Respondent.**

No. 23190.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 6, 1996.

Decided March 1, 1996.

Donald L. Pitts, Shady Spring, for Petitioner.

Darrell V. McGraw, Jr., Attorney General, Scott E. Johnson, Assistant Attorney General, Charleston, for Respondent.

PER CURIAM:

This original proceeding is before this Court upon the petition of Matt Joseph Strogen for relief in habeas corpus. In 1990, the petitioner entered a plea of guilty in the Circuit Court of Raleigh County, West Virginia, to the offense of murder of the first degree, *W.Va.Code,* 61–2–1 [1987], with mercy. The petitioner is incarcerated at the Mt. Olive Correctional Complex in Fayette County, West Virginia. The petitioner asserts a claim of ineffective assistance of counsel.

In December 1995, this Court issued a rule to show cause and ordered the respondent, George Trent, Warden, to appear. *W.Va. R.App.P.* 14. This Court has before it the petition, the response, all other matters of record and the argument of counsel. For the reasons stated below, the writ of habeas corpus is granted, and we remand this matter to the circuit court with directions that the petitioner's plea and conviction be set aside and that further proceedings be conducted in conformity with this opinion.[1]

### I

In 1989, the body of forty-one year old Jackie Dale Smith was found in Raleigh County. Mr. Smith's death was determined to be a homicide by drowning, and the investigation of law enforcement authorities resulted in the bringing of murder charges against three individuals: (1) Demerise Ann Smith, the decedent's wife, (2) Harry Jarrell, the decedent's brother-in-law, and (3) the petitioner, an acquaintance of the decedent. Demerise Ann Smith and Harry Jarrell were each convicted of murder of the first degree. Ms. Smith's appeal from her conviction was refused by this Court in September 1992. Mr. Jarrell's conviction was reversed by this Court in *State v. Jarrell,* 191 W.Va. 1, 442 S.E.2d 223 (1994), upon certain evidentiary matters, and his case was remanded to the circuit court for further proceedings. A detailed account of the facts surrounding the death of Jackie Dale Smith may be found in the opinion in the *Jarrell* case. In particular, the petitioner is alleged to have been hired by Ms. Smith and Mr. Jarrell to assist in Jackie Dale Smith's murder.

With regard to this proceeding, the record indicates that the petitioner was questioned and released concerning the homicide by Detective Arthur A. Bolen of the Raleigh County Sheriff's Office. Thereafter, the petitioner left the State of West Virginia. Soon after, he was incarcerated in Texas upon a controlled substance charge. In July 1990, the petitioner was extradited to West Virginia upon grand larceny charges and placed in the Raleigh County Jail. The officers who brought the petitioner back to West Virginia were Trooper Dave Hess of the West Virginia Department of Public Safety and Detective Bolen. During the automobile trip from the prison at Huntsville, Texas, to the Houston, Texas, airport, the petitioner gave a tape recorded statement to the officers implicating himself in the murder of Jackie Dale Smith. *Jarrell, supra,* 191 W.Va. at 3, 442 S.E.2d at 225.

The officers and the petitioner have furnished conflicting versions of the events surrounding the tape recorded statement. According to Trooper Hess and Detective Bolen, they advised the petitioner of his Mi-

---

**1.** The petition before this Court was filed in July, 1995 pursuant to the West Virginia Post-Conviction Habeas Corpus Act, *W.Va.Code,* 53–4A–1 [1967], *et seq.* As discussed *infra,* an earlier petition under the Act, raising issues similar to those raised in this proceeding, was filed by Matt Joseph Strogen in 1993 in the Circuit Court of Raleigh County. Following an evidentiary hearing conducted on June 21, 1994, the circuit court denied relief with regard to that earlier petition, Case No. 93–HC–64, and in March, 1995 this Court refused to grant an appeal from that ruling.

According to *W.Va.Code,* 53–4A–1 [1967], relief under the West Virginia Post–Conviction Habeas Corpus Act is available only if the contentions and grounds advanced "have not been previously and finally adjudicated" on a prior petition filed under the Act. *See also W.Va.Code,* 53–4A–9 [1967], and *Losh v. McKenzie,* 166 W.Va. 762, 277 S.E.2d 606 (1981), syllabus point 2 of which case states in part: "A judgment denying relief in post-conviction habeas corpus is *res judicata* on questions of fact or law which have been fully and finally litigated and decided [.]"

In particular, *W.Va.Code,* 53–4A–1(b) [1967], provides that such contentions and grounds advanced:

shall be deemed to have been previously and finally adjudicated only when at some point ... in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article ... there was a decision on the merits thereof after a full and fair hearing thereon and the time for the taking of an appeal with respect to such decision has not expired or has expired, as the case may be, or the right of appeal with respect to such decision has been exhausted, unless said decision upon the merits is clearly wrong.

Our order in March, 1995 denying the appeal notwithstanding, inasmuch as the parties herein have not addressed the issue concerning whether the matters now advanced have been "previously and finally adjudicated," we decline to resolve this case upon that basis and will, instead, address the petition upon the merits. *See W.Va. Code,* 53–4A–10 [1967] and syl. pt. 2, *State ex rel. Burgett v. Oakley,* 155 W.Va. 276, 184 S.E.2d 318 (1971).

randa warnings at the Huntsville prison and then proceeded upon the forty-five minute drive to the Houston airport. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). During the drive, Trooper Hess asked the petitioner if he knew why Detective Bolen was present, to which the petitioner replied that Bolen was present because of the murder of Jackie Dale Smith. Several minutes passed after which the petitioner offered to give a statement. While at a restaurant near the Houston airport, the petitioner was again advised of his Miranda warnings, and the petitioner gave the tape recorded statement. According to Trooper Hess and Detective Bolen, the petitioner never insisted upon his right to remain silent and never asked for an attorney.[2]

The petitioner, on the other hand, maintains that he informed Trooper Hess and Detective Bolen during the drive that he did not wish to discuss the murder of Jackie Dale Smith. Furthermore, the petitioner stated that, prior to giving the tape recorded statement, he told the officers that he wanted an attorney.[3] According to the petitioner, however, the officers persisted in questioning

him about the murder and, in addition, suggested to the petitioner that, if he failed to cooperate in the murder investigation, the petitioner would face a lengthy prison term upon the combined sentences concerning numerous grand larceny charges.

On September 11, 1990, the petitioner was indicted by a Raleigh County grand jury for the murder of Jackie Dale Smith. Later that month, the petitioner appeared before the circuit court and indicated to the judge that he did not desire to be represented by an attorney. Nevertheless, by order entered on November 2, 1990, the circuit court appointed Thomas Truman to represent the petitioner upon the murder charge. The record indicates that Mr. Truman's actions consisted principally of interviewing Trooper Hess and Detective Bolen, reviewing the case file of the prosecuting attorney and concluding therefrom that the primary evidence against the petitioner was the tape recorded statement and that no grounds existed to exclude the statement at trial. Neither a motion to suppress the statement, nor any other motion, was filed by Mr. Truman upon the petitioner's behalf. Mr. Truman discussed his conclusions with the petitioner, and on

---

**2.** The above version of the events surrounding the tape recorded statement was furnished by the officers during the evidentiary hearing of June 21, 1994, upon the habeas corpus petition filed by the petitioner in the Circuit Court of Raleigh County, Case No. 93–HC–64. Detective Bolen, however, during his earlier grand jury testimony concerning the indictment of the petitioner for murder, indicated that during the drive to the Houston airport the petitioner stated that he knew about the murder of Jackie Dale Smith but "didn't want to tell about it." The State maintains, however, that the transcript of the grand jury proceedings is inaccurate and that Detective Bolen intended to state that the petitioner, in fact, wanted to talk about the murder.

During the evidentiary hearing of June 21, 1994, the testimony of Detective Bolen was consistent with that of Trooper Hess. As Trooper Hess testified:

Q. While you were in the car on the way to the airport, did Matt Strogen ever say, to either you or to Officer Bolen, that he did not want to talk about the Jackie Smith murder?

A. No, sir.

Q. And did, during that time, he also ask you for an attorney to be present?

A. To my knowledge, Mr. Strogen had never asked me for an attorney at all, through all the proceedings and everything. He never asked me for an attorney.

**3.** During the evidentiary hearing of June 21, 1994, the petitioner testified as follows:

A. [W]hen they started drilling me for the information about that, the death of Jackie Smith, I'd indicated that, you know, I wasn't saying nothing; I don't have nothing to say about it, you know. Even if I did know about it, I wasn't saying nothing about it. So ...

Q. And when did you make that statement?

A. While we was in the car; when they was asking me about the death of Jackie Smith.

. . . .

Q. Did they continue to question you after that statement?

A. Oh, yea.

. . . .

Q. Now did you ever ask for an attorney?

A. I—when I said, 'look, I don't want to say nothing; I want an attorney,' that was it. I mean, I told them I didn't want to say nothing about anything, and I didn't want anything else to do with it.

. . . .

Q. But you did not initiate any conversation concerning the murder of Jackie Dale Smith after you requested counsel, and told them you didn't want to talk about it; is that correct?

A. No, sir.

Q. Is that correct?

A. That's correct, sir.

November 13, 1990, the circuit court accepted the petitioner's plea of guilty to murder of the first degree, with mercy.

In October, 1993, the petitioner filed a *pro se* petition in the Circuit Court of Raleigh County for habeas corpus relief under the West Virginia Post–Conviction Habeas Corpus Act, *W.Va.Code*, 53–4A–1 [1967], *et seq.* Asserting ineffective assistance of counsel, the petition alleged that Mr. Truman failed to make the petitioner aware of possible defects in the State's case. The circuit court appointed Donald L. Pitts to represent the petitioner, and an evidentiary hearing was conducted on June 21, 1994. In August 1994, the circuit court denied relief, finding, *inter alia*, that the tape recorded statement had not been given as the result of coercion by the officers. In March, 1995, this Court refused to grant an appeal from the August, 1994 ruling. On July 10, 1995, this original proceeding was filed by the petitioner. *See* n. 1, *supra.*

## II

■ This Court has recognized that the Sixth Amendment to the Constitution of the United States and article III, § 14, of the Constitution of West Virginia not only assure the "assistance of counsel" to a defendant in a criminal proceeding but also assure that such a defendant receive competent and effective assistance of counsel. As stated in *Cole v. White*, 180 W.Va. 393, 395, 376 S.E.2d 599, 601 (1988): "The right of a criminal defendant to assistance of counsel includes the right to effective assistance of counsel." *See State ex rel. Levitt v. Bordenkircher*, 176 W.Va. 162, 167, 342 S.E.2d 127, 133 (1986); *State ex rel. Wine v. Bordenkircher*, 160 W.Va. 27, 30, 230 S.E.2d 747, 750 (1976); *State ex rel. Favors v. Tucker*, 143 W.Va. 130, 140, 100 S.E.2d 411, 416 (1957), *cert. denied*, 357 U.S. 908, 78 S.Ct. 1153, 2 L.Ed.2d 1158 (1958); *State ex rel. West Virginia–Pittsburgh Coal Co. v. Eno*, 135 W.Va.

473, 482, 63 S.E.2d 845, 850 (1951); Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* I–17 (2nd ed. 1993). *See also W.Va.R.Crim.P.* 44(a).

■ That the right to assistance of counsel in criminal cases includes the right to effective assistance of counsel was articulated by the Supreme Court of the United States in the leading case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland*, a two-pronged test was established for the review of claims of ineffective assistance of counsel. Generally, the first prong requires that a criminal defendant show that counsel's performance was deficient, and the second prong requires a showing that the deficient performance prejudiced the defense.[4] The *Strickland* test was expressly recognized by this Court in *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Describing the test in detail, syllabus point 5 of *Miller* holds:

In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Moreover, as stated in *Miller* in syllabus point 6:

In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a

---

4. As the Court in *Strickland* stated:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant

by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*See also* syl. pts. 1 and 2, *Ronnie R. v. Trent,* 194 W.Va. 364, 460 S.E.2d 499 (1995); syl. pts. 5 and 6, *State v. Wood,* 194 W.Va. 525, 460 S.E.2d 771 (1995); *State v. Woods,* 194 W.Va. 250, 256, n. 2, 460 S.E.2d 65, 71, n. 2 (1995).

■■■ Certainly, an investigation of the case must precede the making of decisions with regard to the representation of a defendant in a criminal case. In particular, we recently observed in *State ex rel. Daniel v. Legursky,* 195 W.Va. 314, 320, 465 S.E.2d 416, 422 (1995), that in applying the *Strickland* test, courts have had "no difficulty finding ineffective assistance of counsel where an attorney neither conducted a reasonable investigation nor demonstrated a strategic reason for failing to do so." Syllabus point 3 of *Daniel* states:

> The fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation.

*See also* syl. pt. 4, *State ex rel. Bess v. Legursky,* 195 W.Va. 435, 465 S.E.2d 892 (1995).

In *Bess,* this Court awarded relief in habeas corpus from a conviction by a jury of murder of the first degree where defense counsel failed to investigate the circumstances leading up to a defendant's confession to the police. Although counsel, in *Bess,* moved to suppress the confession, the record indicated that counsel was unaware of the facts surrounding the confession and failed to consider the defendant's physical and mental state when the confession was given. Citing the above syllabus points of *Miller* and *Daniel,* we noted, in *Bess,* that "[a] command of

all facts and circumstances surrounding a confession is essential to adequate representation." 195 W.Va. at 441–42, 465 S.E.2d at 898–99. Specifically, we acknowledged, in *Bess,* that had counsel competently investigated the circumstances surrounding the confession, he could potentially have provided the defendant with a more substantial basis for challenging the confession's admissibility.

By contrast, this Court, in *Levitt v. Bordenkircher, supra,* denied relief in habeas corpus upon a claim of ineffective assistance of counsel where the defendant had entered a plea of guilty to murder of the first degree. Although the defendant, in *Levitt,* asserted that the failure to move to suppress his confession constituted ineffective assistance of counsel, the record disclosed no grounds upon which the confession could have been suppressed. As the *Levitt* opinion states:

> The appellant testified at the Marshall County hearing that the confession was not based upon threats or a failure by the authorities to advise him of his constitutional rights. The appellant's counsel explored the question of threats, etc., with the appellant, and the prosecutor involved in the case testified, at the Marshall County hearing, that 'I had confidence as a prosecutor that [the confession] wouldn't have been suppressed.'

> Accordingly, we note that, in view of the confession's clear admissibility, the absence of a motion to suppress the appellant's confession did not constitute ineffective assistance of counsel.

176 W.Va. at 170, 342 S.E.2d at 135. *See also Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and *Ostrander v. Green,* 46 F.3d 347 (4th Cir.1995), both of which cases discuss ineffective assistance of counsel in the context of a plea of guilty, and Gregory G. Sarno, Annotation, *Adequacy of Defense Counsel's Representation of Criminal Client Regarding Guilty Pleas,* 10 A.L.R.4th 8 (1981), and Gregory G. Sarno, Annotation, *Adequacy of Defense Counsel's Representation of Criminal Client Regarding Confessions and Related Matters,* 7 A.L.R.4th 180 (1981).

■ In the proceeding before this Court, the record is clear that, during the drive to the Houston airport, the subject of the murder of Jackie Dale Smith arose when Trooper Hess asked the petitioner if he knew why Detective Bolen was present. Detective Bolen had questioned the petitioner about the murder in 1989. The State contends that the petitioner's subsequent statement was completely voluntary and given after proper Miranda warnings. As indicated above, however, the petitioner asserts that the statement was involuntary and given after persistent questioning by the officers and upon a threat that, if he failed to cooperate, he would face a lengthy prison term upon the combined sentences concerning numerous grand larceny charges. According to the petitioner, he told the officers that he did not want to talk about the murder, and requested counsel prior to giving the statement. As the record indicates and as counsel confirmed during oral argument before this Court, the petitioner's statement was the primary link connecting the petitioner to the murder of Jackie Dale Smith.

■ The petition asserts that Mr. Truman "failed to investigate the circumstances regarding Strogen's statement to the police officers to determine whether or not it could be challenged." Regrettably, we must agree with that assertion. Mr. Truman did not file a motion to suppress the statement, or any other motions, upon the petitioner's behalf. While, as suggested in *Levitt,* the absence of a motion to suppress a confession is not, *per se,* ineffective assistance of counsel, the record in this proceeding shows that Mr. Truman lacked "a command of all facts and circumstances" surrounding the petitioner's statement and, thus, could not have made an informed decision concerning the statement's

validity. *See Bess, supra.* Certainly, the burden is upon the attorney, rather than upon the accused, to conduct an analysis concerning the legal validity of a confession. Here, Mr. Truman was largely unaware of the forty-five minute drive of the petitioner to the Houston airport, and he made no inquiry as to whether the petitioner had asked to remain silent or asked for an attorney.[5] Undoubtedly, an investigation of those particular matters was critical. As stated in Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* I–438–39 (2nd ed. 1993): "[I]f the suspect asserts the right to remain silent, the interrogation must come to an end. A similar rule applies when the suspect requests counsel." *See also* syl. pts. 1 and 2, *State v. Easter,* 172 W.Va. 338, 305 S.E.2d 294 (1983) (right to counsel); syl. pt. 3, *State v. Rissler,* 165 W.Va. 640, 270 S.E.2d 778 (1980) (right to remain silent); syl. pt. 1, *State v. Bradley,* 163 W.Va. 148, 255 S.E.2d 356 (1979) (right to counsel).

Moreover, the fact that Mr. Truman was appointed to represent the petitioner on November 2, 1990, and the petitioner's plea of guilty to murder of the first degree was entered on November 13, 1990, casts a degree of doubt upon the adequacy of Mr. Truman's investigation, especially where, as here, Mr. Truman's conclusion that no grounds existed to exclude the statement at trial was principally drawn from a review of the file of the prosecuting attorney.

As this Court observed in *State v. Bias,* 171 W.Va. 687, 690, 301 S.E.2d 776, 779 (1983): "We are very cautious about finding that counsel has been ineffective." However, the record in this proceeding demonstrates that the decisions of petitioner's counsel, which included a recommendation that the

---

5. During the evidentiary hearing of June 21, 1994, Mr. Truman testified as follows:

Q. Did you ask the defendant whether or not, before he made that statement, if he had asked to remain silent?

A. I don't think I asked him those words.

. . . .

Q. Did—did you ask him if he had, before he made the statement, asked for a counsel to be present?

A. He didn't tell me that he asked that.

Q. But did you ask him?

A. I think, pretty much, I took his waiver, at the time, at face value.

. . . .

Q. —did you know that it was about a forty-five minute drive from the prison to the airport, in which they had a discussion with Mr. Strogen?

A. No. I didn't know that.

Q. And did you discuss that with Mr. Strogen at all?

A. The forty-five minute drive?

Q. Yes.

A. No, sir. I don't recall that conversation at all.

petitioner enter the plea of guilty, were not based upon an adequate or reasonable investigation, as contemplated in *Daniel, supra.* Consequently, the petitioner is correct in his assertion of ineffective assistance of counsel.[6] The writ of habeas corpus is, therefore, granted, and this Court remands this matter to the Circuit Court of Raleigh County with directions that the petitioner's plea and sentence be set aside and that further proceedings be conducted in conformity with this opinion.

Writ granted.

---

6. In conjunction with his claim of ineffective assistance of counsel, the petitioner asserts that the circuit court failed to make a thorough inquiry as to the voluntariness of his plea of guilty to murder of the first degree. *W.Va.R.Crim.P.* 11; *Call v. McKenzie,* 159 W.Va. 191, 220 S.E.2d 665 (1975). The circuit court accepted the petitioner's plea on November 13, 1990. We need not address that issue, however, in view of the setting aside of the petitioner's plea and sentence because of ineffective assistance of counsel.