# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 16-0467** (Monongalia County 12-F-295)

**Silvan Jobe,**
**Defendant Below, Petitioner**

**FILED**

**June 9, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Silvan Jobe, by counsel S. Sean Murphy, appeals the Circuit Court of Monongalia County's February 14, 2014, order denying his motion for judgment of acquittal, denying his request for a post-conviction examination, and sentencing him to a term of incarceration of 105 to 245 years. Respondent the State of West Virginia, by counsel Benjamin F. Yancey III, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 15, 2012, petitioner sexually assaulted V.M., a student at West Virginia University, at knifepoint, including vaginal, anal, and oral intercourse.[1] According to V.M., throughout the assault petitioner repeatedly told her that he would kill her if she did not cooperate. He also instructed her not to scream and told her that she could not tell him "no." During the assault, when V.M. was performing oral intercourse on petitioner, V.M. began gagging and told petitioner that she was going to throw up. He responded by threatening to kill her if she threw up. Petitioner fell asleep beside of V.M., but V.M. stated that she was too afraid to flee. When petitioner awoke, he continued to sexually assault V.M. During the sexual assault, petitioner ejaculated and seminal fluid went onto a shirt. Petitioner used that same shirt to wipe V.M.'s vaginal area and the headboard of her bed. Petitioner later tied V.M.'s hands to her bed with her underwear and tied her feet to a hook on the room's window sill. Shortly before leaving, he informed V.M. that he had looked at her driver's license and that he knew who she was and

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.,* 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.,* 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.,* 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

where she lived. V.M. eventually called out to her roommate, Megan, who came to V.M.'s room and found her tied up. V.M. and Megan went to the hospital and police were contacted.

In September of 2012, petitioner was indicted on seven counts of first degree sexual assault. In November of 2012, petitioner moved the circuit court for a psychiatric evaluation to determine his competency to stand trial. Following a hearing on that motion, the parties submitted an agreed order providing that petitioner would undergo a psychiatric evaluation by Dr. Thomas Adamski to determine petitioner's competency to stand trial. Upon receipt of that order, the circuit court granted petitioner's motion and continued his trial. During a subsequent pretrial hearing, the circuit court was informed that Dr. Adamski twice attempted to conduct that examination but was unable to do so due to petitioner's uncooperativeness. The circuit court then ordered that petitioner be transported from the regional jail to the forensic unit in a different regional jail where petitioner was to undergo an observation period, in addition to a competency/criminal responsibility evaluation. The court then continued petitioner's trial again. In March of 2013, the circuit court was informed at a hearing that Dr. Adamski could not perform a competency/criminal responsibility evaluation because petitioner was still being uncooperative. Later that month, petitioner finally underwent a competency evaluation. Dr. Ralph Smith issued a report in April of 2013 finding that petitioner was incompetent to stand trial, though he also opined that with treatment petitioner was likely to regain competency within a few months. Shortly thereafter, the circuit court entered an order finding petitioner incompetent to stand trial and ordering that petitioner be placed at the William Sharpe Hospital for three months where he could receive treatment to regain competency. Later that month, the chief medical officer at the hospital notified the circuit court that additional time was needed to restore petitioner's competency to stand trial.

In November of 2013, petitioner was again evaluated to determine his competency to stand trial. Dr. Mohammed Issa issued his report on November 21, 2013, finding that petitioner was competent to stand trial. Upon receipt of that report, the circuit court issued an order finding petitioner competent to stand trial. On December 5, 2013, petitioner filed a notice asserting that he intended to present an insanity defense at trial. On December 9, 2013, only one day before his trial was scheduled to begin, petitioner filed a motion for a criminal responsibility evaluation to determine his state of mind at the time of the crimes charged in the indictment. On the morning of trial, December 10, 2013, the circuit court granted petitioner's motion, ordering that Dr. Adamski listen to V.M.'s trial testimony. Following that testimony, Dr. Adamski met with petitioner, during a court recess, to conduct the criminal responsibility evaluation. Thereafter, Dr. Adamski testified that petitioner was criminally responsible at the time of the crimes charged in the indictment. Based on that testimony, the circuit court found that petitioner was criminally responsible.

Petitioner was tried in a bench trial on December 10 and 11, 2013, and the circuit court found him guilty of seven counts of first degree sexual assault. Thereafter, petitioner filed a motion for judgment of acquittal, which was denied by the circuit court by order entered February 14, 2014. In that order, the circuit court also denied petitioner's motion for a post-conviction examination based on the fact that the court was already in possession of petitioner's psychiatric evaluations it would consider for sentencing. Petitioner was sentenced to fifteen to thirty-five years of incarceration for each count of first degree sexual assault with said sentences

2

to run consecutively for a total of 105 to 245 years of incarceration. Petitioner was informed of the requirement that he register as a sex offender following his release from incarceration and advised of the mandatory extended supervision of sex offenders for a period of fifty years. On April 28, 2016, the circuit court entered its order on petitioner's motion for re-sentencing for purposes of appeal because his trial counsel failed to file a timely appeal of the matter.[2] Petitioner appeals from those orders.

On appeal, petitioner asserts three assignments of error. First, he contends that the circuit court erred by refusing to continue the trial and order that petitioner undergo a criminal responsibility evaluation pursuant to West Virginia Code § 27-6A-4.[3] Petitioner acknowledges

---

[2] Petitioner's appellate counsel was not trial counsel below.

[3] West Virginia Code § 27-6A-4 provides, in relevant part, as follows:

(a) If the court of record finds, upon hearing evidence or representations of counsel for the defendant, that there is probable cause to believe that the defendant's criminal responsibility or diminished capacity will be a significant factor in his or her defense, the court shall appoint one or more qualified forensic psychiatrists or qualified forensic psychologists to conduct a forensic evaluation of the defendant's state of mind at the time of the alleged offense. However, if a qualified forensic evaluator is of the opinion that the defendant is not competent to stand trial that no criminal responsibility or diminished capacity evaluation may be conducted. The forensic evaluation may not be conducted at a state inpatient mental health facility unless the defendant has been ordered to a mental health facility in accordance with subsection (c), section two [§ 27-6A-2] of this article or subsection (f) or (h), section three [§ 27-6A-3] of this article. To the extent possible, qualified forensic evaluators who have conducted evaluations of competency under subsection (a), section two of this chapter shall be used to evaluate criminal responsibility or diminished capacity under this subsection.
(b) The court shall require the party making the motion for the evaluations, and other parties as the court considers appropriate, to provide to the qualified forensic evaluator appointed under subsection (a) of this section any information relevant to the evaluation within ten business days of its evaluation order. The information shall include, but not be limited to:
(1) A copy of the warrant or indictment;
(2) Information pertaining to the alleged crime, including statements by the defendant made to the police, investigative reports and transcripts of preliminary hearings, if any;
(3) Any available psychiatric, psychological, medical or social records that are considered relevant;
(4) A copy of the defendant's criminal record; and
(5) If the evaluation is to include a diminished capacity assessment, the nature of any lesser criminal offenses.
(continued . . .)

that continuances are generally governed by the discretion of the circuit court, but he contends that because the circuit court was aware of his history of recent mental illness, its refusal to continue the trial in order for petitioner and his counsel to arrange for a criminal responsibility evaluation was clear error.

Not only did petitioner's trial counsel fail to request a continuance, but on the first day of trial counsel affirmatively stated that a criminal responsibility evaluation "could be done now." As we set forth in *State v. LaRock*, 196 W.Va. 294, 316, 470 S.E.2d 613, 635 (1996),

---

(c) A qualified forensic evaluator shall schedule and arrange within fifteen days of the receipt of appropriate documents the completion of any court-ordered evaluation which may include record review and defendant interview and shall, within ten business days of the date of the completion of any evaluation, provide to the court of record a written, signed report of his or her opinion on the issue of criminal responsibility and if ordered, on diminished capacity. The court may extend the ten-day period for filing the report if a qualified forensic evaluator shows good cause to extend the period, but in no event may the period exceed thirty days. If there are no objections by the State or defense counsel, the court may, by order, dismiss the requirement for a written report if the qualified forensic evaluator's opinion may otherwise be made known to the court and interested parties. . . .

(d) If the court determines that the defendant has been uncooperative during a forensic evaluation ordered pursuant to subsection (a) of this section or there are inadequate or conflicting forensic evaluations performed pursuant to subsection (a) of this section, and the court has reason to believe that an observation period and additional forensic evaluation or evaluations are necessary in order to determine if a defendant was criminally responsible or with diminished capacity, the court may order the defendant be admitted to a mental health facility designated by the department for a period not to exceed fifteen days and an additional evaluation be conducted and a report rendered in like manner as subsections (a) and (b) of this section by one or more qualified forensic psychiatrists or one or more qualified forensic psychologists. At the conclusion of the observation period, the court shall enter a disposition order and the sheriff of the county where the defendant was charged shall take immediate custody of the defendant for transportation and disposition as ordered by the court.
. . .

(f) In addition to any court-ordered evaluations completed pursuant to section two [§ 27-6A-2], three [§ 27-6A-3] or four [§ 27-6A-4] of this article, the defendant or the State has the right to an evaluation or evaluations by a forensic evaluator or evaluators of his or her choice and at his or her expense. . . .

4

[o]ur cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights. Recently, we stated in *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996): "The rule in West Virginia is that parties must speak clearly in the circuit court, on pain that, if they forget their lines, they will likely be bound forever to hold their peace." (Citation omitted). When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time. The pedigree for this rule is of ancient vintage, and it is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs. There is also an equally salutary justification for the raise or waive rule: It prevents a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error (or even worse, planting an error and nurturing the seed as a guarantee against a bad result). In the end, the contemporaneous objection requirement serves an important purpose in promoting the balanced and orderly functioning of our adversarial system of justice.

Petitioner does not point to any request for a continuance below or even an objection his counsel put on the record regarding the criminal responsibility examination. In addition, he does not contest the fact that he underwent the requested evaluation. Therefore, we find that petitioner waived any perceived error related to a continuance of the trial to allow for a criminal responsibility examination.

Petitioner's second assignment of error is that the circuit court erred in scheduling and proceeding with his trial only fourteen days after the entry of an order finding petitioner competent to stand trial. Petitioner's argument on this point is essentially an ineffective assistance of counsel argument based on the fact that his trial counsel had only a short time to prepare for trial after petitioner was found to be competent to stand trial. He correctly points to this Court's prior holding that "counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions." Syl. Pt. 3, in part, *State ex rel. Strogen v. Trent*, 196 W. Va. 148, 469 S.E.2d 7 (1996). However, most of the cases he cites are irrelevant to his argument because they deal with competency at the time of trial. *See State v. Milam*, 159 W. Va. 691, 697, 226 S.E.2d 433, 438 (1976) ("Although an accused may have been sane at the time of the commission of an offense, he cannot be subjected to trial unless he is able to consult with his attorney and to assist in the preparation of his defense with a reasonable degree of rational understanding of the nature and object of the proceeding against him"); *State v. Kent*, 213 W.Va. 535, 539, 584 S.E.2d 169, 173 (2003) ("Criminal defendants have the right to be competent to stand trial and to meaningfully participate in their defense"). Here, both petitioner's doctor and the circuit court had previously found that he was competent to stand trial.

He also argues that pursuant to West Virginia Code § 27-6A-3, he should have been afforded twenty days to request an evidentiary hearing to address his competency. West Virginia Code § 27-6A-3(a) provides as follows:

5

> Within five days of the receipt of the qualified forensic evaluator's report and opinion on the issue of competency to stand trial, the court of record shall make a preliminary finding on the issue of whether the defendant is competent to stand trial and if not competent whether there is a substantial likelihood that the defendant will attain competency within the next three months. If the court of record orders, or if the State or defendant or defendant's counsel within twenty days of receipt of the preliminary findings requests, a hearing, then a hearing shall be held by the court of record within fifteen days of the date of the preliminary finding, absent good cause being shown for a continuance. If a hearing order or request is not filed within twenty days, the preliminary findings of the court become the final order.

That statute clearly provides an individual who is found to be competent to stand trial the right to request a hearing regarding such finding. However, at no point during the underlying proceeding did petitioner's trial counsel request such hearing or request a continuance of the trial so that such hearing could be conducted. Therefore, we again look to our long-standing requirement that a party assert or waive an objection or a potential ground for appeal. *See LaRock*, 196 W.Va. 294, 470 S.E.2d 613. For these reasons, we find that the circuit court did not err by conducting petitioner's trial less than twenty days after he was found competent to stand trial.

Finally, petitioner argues that the circuit court erred by denying his motion for a post-conviction evaluation. Citing West Virginia Code § 62-12-2(e), in relevant part, he contends that his eligibility for probation is specifically conditioned on his "undergoing a physical, mental and psychiatric study and diagnosis which shall include an on-going treatment plan requiring active participation in sexual abuse counseling at a mental health facility or through some other approved program." He asserts that while he had undergone previous evaluations, none of those focused on the likelihood that he would reoffend or his treatment options to deal with his sexual abuse issues. While West Virginia Code § 62-12-2(e) provides, in relevant part, that "such person shall only be eligible for probation after undergoing physical, mental and psychiatric study and diagnosis which shall include an on-going treatment plan requiring active participation in sexual abuse counseling at a mental health facility or through some other approved program . . . ," it does not require that a circuit court order such evaluation.

Circuit courts have broad discretion in deciding whether to grant or deny probation in a criminal matter, and the decision to deny probation will only be overturned when that decision constitutes a palpable abuse of discretion. *See* Syl. Pt. 2, *State v. Shafer*, 168 W. Va. 474, 284 S.E.2d 916 (1981). Petitioner was convicted of seven counts of first degree sexual assault, including multiple instances of petitioner forcing V.M. to engage in vaginal intercourse, anal intercourse, and oral intercourse. Further, he engaged in those activities while holding a knife to V.M. and threatening to kill her. The circuit court heard testimony from the victim and Dr. Adamski, who met with petitioner on several occasions, including on the first day of trial. Therefore, we find that under the specific facts of this case the circuit court did not err in denying petitioner's motion for a post-conviction evaluation.

Affirmed.

**ISSUED:**  June 9, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker